IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FMC2, INC.
336 West Street Road
Feasterville, PA 19053

and

FLEETWAY LEASING COMPANY                    CIVIL ACTION NO.
336 West Street Road
Feasterville, PA 19053

                Plaintiffs,

vs.

AUTO BOUTIQUE OF SOUTH FLORIDA, INC.
d/b/a AUTO BOUTIQUE
3975 NW 25th Street
Miami, FL 33142

and

HOWARD ELFAND
3500 Mystic Pointe Drive
Miami, FL 33180

and

YOUSSEF AZIZ
11330 NW 82nd Terrace
Doral, FL 33178

                Defendants.

## COMPLAINT

### PARTIES

1.      Plaintiff FMC2, Inc. ("FMC2") is a Pennsylvania corporation with a principal place of business as captioned.

2.      FMC2 is domiciled in Pennsylvania.

3.      Plaintiff Fleetway Leasing Company ("Fleetway") is a Pennsylvania corporation with a principal place of business as captioned.

4.      Fleetway is domiciled in Pennsylvania.

5.      FMC2 and Fleetway are affiliates.

6.      Defendant Auto Boutique of South Florida, Inc. d/b/a Auto Boutique ("Auto Boutique") is, upon information and belief, a Florida corporation with a principal place of business as captioned.

7.      Defendant Auto Boutique is domiciled in Florida.

8.      Defendant Howard Elfand is, upon information and belief, an adult individual with a primary residence as captioned.

9.      Defendant Elfand is domiciled in Florida.

10.     Defendant Youssef Aziz is, upon information and belief, an adult individual with a primary residence as captioned.

11.     Defendant Aziz is domiciled in Florida.

## JURISDICTION & VENUE

12.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy is in excess of $75,000.00.

13.     Venue in this Honorable Court is proper because the contracts between the parties provide for venue in any state or federal court within Pennsylvania.

## FACTS

14.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

15.    On or about November 18, 2014, FMC2 and Auto Boutique entered into a Master Lease Agreement (the "Master Lease") whereby Auto Boutique leased from FMC2 certain vehicles.

16.    A true and correct copy of the Master Lease is attached hereto and made a part hereof as Exhibit "A."

17.    On or about October 7, 2015, Elfand and Aziz each executed a Lease Guaranty (the "Guaranty") wherein Elfand and Aziz agreed to personally guaranty Auto Boutique's obligations to FMC2 under the Master Lease.

18.    A true and correct cop of the Guaranty is attached hereto and made a part hereof as Exhibit "B."

19.    The invoices issued by FMC2 to Auto Boutique and due June 1, 2016, were not paid by Auto Boutique.

20.    Auto Boutique's failure to pay the invoices due June 1, 2016 constituted a default under the Master Lease.

21.    Elfand and Aziz failed and refused to cure Auto Boutique's default.

22.    Elfand and Aziz's failure to cure Auto Boutique's default constituted a default under the Personal Guarantee.

23.    Fleetway, Auto Boutique, Elfand, and Aziz then entered into a Forbearance Agreement dated June 17, 2016.

24.     A true and correct copy of the Forbearance Agreement is attached hereto and made a part hereof as Exhibit "C."

25.     In connection with the Forbearance Agreement, Fleetway and Auto Boutique entered into a Commercial Motor Vehicle Lease Agreement (the "Lease Agreement") whereby Auto Boutique leased from Fleetway certain vehicles.

26.     A true and correct copy of the Lease Agreement is attached hereto and made a part hereof as Exhibit "D."

27.     On or about July 15, 2016, Elfand and Aziz executed an Installment Note in favor of Fleetway Leasing (the "Note").

28.     A true and correct copy of the Note is attached hereto and made a part hereof as Exhibit "E."

29.     Auto Boutique failed to make the payments required under the Forbearance Agreement and Lease Agreement.

30.     Elfand and Aziz again failed and refused to cure Auto Boutique's defaults.

31.     Elfand and Aziz also failed to make payments due under the Note.

32.     On January 13, 2017, Plaintiffs provided Defendants with written notice of default (the "Default Notices").

33.     The Default Notices are collectively attached hereto and made a part hereof as Exhibit "F."

34.     As a result of Defendants' defaults under the Lease Agreement and Forbearance Agreement, the sum of $512,025.09 is due and owing by Defendants to Plaintiffs.

35.     Further, pursuant to the Lease Agreement, Plaintiffs are entitled to attorney's fees equal to twenty percent (20%) of the total amount due.

36.     Plaintiffs are accordingly entitled to attorney's fees of $102,405.01 under the Lease Agreement.

37.     The total due from Defendants to Plaintiffs for breaches of the Lease Agreement, Forbearance Agreement, and Guaranty is $614,430.10.

38.     As a result of Elfand and Aziz's defaults under the Note, the total sum of $76,228.26 is due and owing to Fleetway.

39.     Despite demand, Defendants have failed and refused to cure their defaults.

## COUNT I - BREACH OF CONTRACT
*Fleetway v. Auto Boutique*

40.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

41.     The Lease Agreement constitutes a binding contract between Fleetway and Auto Boutique.

42.     Pursuant to the Lease Agreement, Auto Boutique agreed to pay certain amounts to Fleetway on a monthly basis in exchange for Fleetway leasing vehicles to Auto Boutique.

43.     Auto Boutique breached the Lease Agreement by failing and refusing to make payments as and when due.

44.     As a result of Auto Boutique's breaches of the Lease Agreement, Fleetway has been damaged.

WHEREFORE, Plaintiff Fleetway Leasing Company demands judgment in its favor and against Defendant Auto Boutique of South Florida, Inc. d/b/a Auto Boutique in the sum of $614,430.10 plus prejudgment interest, post-judgment interest, costs, and any other relief this Honorable Court deems just and proper.

### COUNT II - BREACH OF CONTRACT
*Fleetway and FMC2 v. Elfand and Aziz*

45.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

46.     The Guaranty constitutes a binding contract between Plaintiffs and Elfand and Aziz whereby Elfand and Aziz agreed to personally guaranty Auto Boutique's obligations to Plaintiffs.

47.     Elfand and Aziz breached the Guaranty by failing and refusing to cure Auto Boutique's defaults.

48.     As a result of Elfand and Aziz's breaches of the Guaranty, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs FMC2, Inc. and Fleetway Leasing Company demand judgment in their favor and against Defendants Howard Elfand and Youssef Aziz, jointly and severally, in the sum of $614,430.10 plus prejudgment interest, post-judgment interest, costs, and any other relief this Honorable Court deems just and proper.

### COUNT III - BREACH OF CONTRACT
*Fleetway v. Elfand and Aziz*

49.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

50.     The Note constitutes a binding contract whereby Elfand and Aziz agreed to pay certain sums to Fleetway.

51.     Elfand and Aziz breached the Note by failing and refusing to make payments as and when due.

52.     As a result of Elfand and Aziz's breaches of the Note, Fleetway has been damaged.

WHEREFORE, Plaintiff Fleetway Leasing Company demands judgment in its favor and against Defendants Howard Elfand and Youssef Aziz, jointly and severally, in the sum of $76,228.26 plus prejudgment interest, post-judgment interest, costs, and any other relief this Honorable Court deems just and proper.

**COUNT IV – UNJUST ENRICHMENT**
*Fleetway and FMC2 v. Auto Boutique, Elfand, and Aziz*

53.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

54.     Auto Boutique received a benefit from FMC2 and Fleetway as FMC2 and Fleetway provided vehicles to Auto Boutique.

55.     Auto Boutique utilized the vehicles to its benefit.

56.     Elfand and Aziz received a benefit from FMC2 and Fleetway as, upon information and belief, Elfand and Aziz derived monetary compensation from Auto Boutique's use of the FMC2 and Fleetway's vehicles.

57.     It would be unjust for Defendants to retain those benefits as Defendants have not paid Plaintiffs for amounts due and owing.

WHEREFORE, Plaintiffs FMC2, Inc. and Fleetway Leasing Company demand judgment in their favor and against Defendants Auto Boutique of South Florida, Inc. d/b/a Auto Boutique, Howard Elfand, and Youssef Aziz, jointly and severally, in the sum of $690,658.36 plus prejudgment interest, post-judgment interest, costs, and any other relief this Honorable Court

deems just and proper.

LUNDY, BELDECOS & MILBY, P.C.

Date:  10/31/2017        By:

JESSICA M. GULASH, ESQUIRE
PA ID #208463

450 N. Narberth Avenue, Suite 200
Narberth, PA 19072

(610) 668-0772
jgulash@lbmlaw.com

*Attorney for Plaintiffs*

# Exhibit "A"

**FMC2 INC.**
**336 W Street Road**
Feasterville, PA 19053

**MASTER LEASE AGREEMENT**

# MASTER LEASE AGREEMENT

THIS MASTER LEASE AGREEMENT ("Lease"), dated November 18, 2014 is executed by and between FMC2 Inc. with a place of business located at 336 West Street Road, Feasterville, PA 19053 ("Lessor") and AUTO BOUTIQUE , ("Lessee"), with its mailing address and chief place of business at 3975 NW 25th Street Miami, FL 33142 (Lessee)

Terms and Conditions

Lessor and Lessee, INTENDING TO BE LEGALLY BOUND, hereby agrees as follows:

1. **LEASE.** Subject to the terms and conditions hereof and upon written acceptance signed at Lessor's office by an authorized employee of Lessor, Lessor agrees to lease the Equipment to Lessee and Lessee hereby leases from Lessor the personal property listed in each Equipment Schedule, or if separately scheduled, in the schedule hereto annexed, marked Schedule "A" and made a part hereof. Each Equipment Schedule shall be made a part of this Master Lease ("Lease") upon execution and delivery of the Equipment covered thereby, together with all replacements thereof and parts, repairs, improvements, additions, accessions and accessories now or hereafter incorporated therein and/or affixed thereto (all of the aforesaid personal property and other items being hereinafter individually and collectively referred to as "Equipment"), and shall be deemed a separate Lease on the terms stated herein and in each such Equipment Schedule. Lessee requests Lessor to purchase the Equipment from Supplier and to lease Equipment to Lessee upon the terms and conditions of this Lease and Equipment Schedule(s). Lessor and Lessee further agree to all of the terms and conditions of this Lease as set forth in this Lease and the Equipment Schedule(s), including but not limited to the NO WARRANTIES provision contained in Paragraph 4 and the WARRANT OF ATTORNEY provision contained in Paragraph 6 and have caused this Lease to be executed by their duly authorized agents and/or officers. Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in this Lease the serial numbers, and other identification data pertaining to the Equipment when the same are determined by the Lessor.

2. **TERM.** The term ("Term") of this Lease commences upon the date set forth above or the date which Lessor accepts this Lease, whichever occurs later, and shall continue in effect so long as the Term of any Equipment Schedule executed pursuant hereto remains in effect. The Term of each Equipment Schedule shall be for the period set forth therein and shall commence on the date which Lessor accepts the Equipment Schedule, and ends upon the expiration of the number of months specified in the Equipment Schedule as "Initial Term Of Lease" after the "Payment Commencement Date". Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in this Lease as the "Payment Commencement Date" the date upon which the Equipment is delivered to and accepted by Lessee or any later date selected by Lessor. In addition to the authority granted to Lessor in this Paragraph and in Paragraph 1 hereof, Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in this Lease any additional information necessary to complete the Lease and, in furtherance of such authorization, to complete any blank space in the Lease with the appropriate information, and such additional information shall become part of this Lease.

3. **LEASE PAYMENTS.** During the Term of this Lease and all Equipment Schedules, and without deduction, reduction, set off or counterclaim, Lessee shall pay lease payments ("Lease Payments") in advance in such amounts (based upon the Amount Of Each Monthly Lease Payment and applicable tax) and at such intervals (monthly, quarterly or otherwise) as shall be consistent with the Equipment Schedule. The monthly due date and the due date for the first payment will be set by Leasing Company may but will not be more than 30 days from the day you accept delivery of the Equipment. Leasing Company may charge you a partial payment for the time between the delivery date and the date the first regular payment is due. The first Lease Payment shall be due and payable on the date set forth as the "Payment Commencement Date" and shall be applicable to the payment period commencing on the date as the "Payment Commencement Date." Subsequent Lease Payments shall be due and payable in advance as follows: (A) if the designation "Lease Payments Will Be Made" is marked "Monthly", then on the same date of each subsequent month of the Term as the Payment Commencement Date; (B) if the designation is marked "Quarterly", then on the comparable date of each subsequent quarter thereafter during the Term as the Payment Commencement Date; and 8 if the aforesaid designation is marked "Other", on such dates as set forth on the Equipment Schedule, or if separately scheduled, in the schedule hereto annexed, marked Schedule "B" and made a part hereof. In the event of any disagreement between Lessor and Lessee as to the amount of the Lease Payment which should be paid or as to the date upon which Lease Payments should be made, the reasonable determination of Lessor shall prevail and Lessee shall make such payments as directed by Lessor. Lease Payments shall be due and payable whether or not Lessee has received any notice that such payments are due. All Lease Payments shall be paid to Lessor at its address set forth above or as otherwise directed by Lessor in writing. No portion of any Lease' Payment shall be deemed to constitute payment for any equity interest in the Equipment. In no event, shall any advance Lease Payments or any other amounts paid by Lessee in advance pursuant to the provisions of this Lease or otherwise bear interest.

4. **NO WARRANTIES.** NO WARRANTIES BY LESSOR OR ANY ASSIGNEE OF LESSOR. LESSEE ACKNOWLEDGES THAT IT HAS SELECTED BOTH (A) THE EQUIPMENT LISTED OR REFERRED TO IN THE EQUIPMENT SCHEDULE(S) (B) THE SUPPLIER FROM WHOM LESSOR IS TO PURCHASE SAID EQUIPMENT. IN THIS RESPECT, LESSEE ACKNOWLEDGES THAT LESSOR IS NOT THE MANUFACTURER OF SAID EQUIPMENT NOR THE AGENT OF SAID MANUFACTURER. LESSEE FURTHER ACKNOWLEDGES THAT LESSOR HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION, EITHER EXPRESSED OR IMPLIED, OF ANY KIND WHATSOEVER WITH RESPECT TO THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO: (A) AS TO THE FITNESS, DESIGN OR CONDITION OF THE EQUIPMENT; (B) AS TO THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; 8 AS TO THE QUALITY OR CAPACITY OF THE EQUIPMENT, THE MATERIALS IN THE EQUIPMENT, OR WORKMANSHIP IN THE EQUIPMENT; (D) AS TO ANY LATENT DEFECTS IN THE EQUIPMENT; (E) AS TO ANY PATENT, COPYRIGHTS, OR TRADE SECRET INFRINGEMENT; AND (F) AS TO THE COMPLIANCE OF THE EQUIPMENT WITH ANY REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION, OR CONTRACT PERTAINING THERETO. LESSEE FURTHER ACKNOWLEDGES THAT IS LEASING SAID EQUIPMENT FROM LESSOR IN AN "AS IS" CONDITION AND THAT NO DEFECT OR UNFITNESS OF THE EQUIPMENT SHALL RELIEVE LESSEE OF LESSEE'S OBLIGATION TO PAY THE LEASE PAYMENTS OR ANY OTHER OBLIGATION LESSEE MAY HAVE TO LESSOR UNDER THE TERMS OF THIS LEASE. IT IS AGREED THAT LESSOR SHALL HAVE NO OBLIGATION TO INSTALL, ERECT, TEST, ADJUST, REPAIR OR SERVICE THE AFORESAID EQUIPMENT. LESSEE UNDERSTANDS THE RISK THAT COMPUTER APPLICATIONS MAY NOT BE ABLE TO PROPERLY PERFORM DATE-SENSITIVE FUNCTIONS AFTER SEPTEMBER 08, 1999 AND LESSOR MAKES NO (AND SHALL NOT BE DEEMED TO HAVE MADE) WARRANTIES, EXPRESSED OR IMPLIED, AS TO THE ABILITY OF THE EQUIPMENT UNDER LEASE TO PERFORM SAID FUNCTIONS. The parties agree that this Lease is a "Finance Lease" as defined by Section 2A-103(a) of the Uniform Commercial Code (UCC). Lessee acknowledges either (A) that Lessee has reviewed and approved a written Supply Contract [as defined by UCC Section 2A-103(a)] covering the Equipment purchased from the "Supplier" [as defined by UCC Section 2A-103(a)]thereof for lease to Lessee, or (B) that Lessor has informed or advised Lessee, in writing, of the following: (i) the identity of the Supplier; (ii) that the Lessee may have rights under the Supply Contract; and (iii) that the Lessee may contact the Supplier for a description of any such rights Lessee may have under the Supply Contract. Lessor shall not be liable to Lessee for any loss, damage or expense of any kind or nature caused, directly or indirectly, by any equipment leased hereunder or the use or maintenance thereof or the failure or operation thereof, or the repair, service or adjustment thereof, or by any delay or failure to provide any such maintenance, repairs, service or adjustment, or by any interruption of service or losses of use thereof or for any loss of business however caused. Lessor shall not be liable for any consequential damages as that term is used in UCC Section 2-719(c). No defect or unfitness of the Equipment shall relieve Lessee of the

obligation to pay any Lease Payment or any other obligation under this Lease. Lessor shall have no obligation under this Lease in respect of the Equipment and shall have no obligation to install, erect, test, adjust or service the Equipment. Lessor agrees, so long as there shall not have occurred or be continuing any Event of Default as defined in this Lease or event which with lapse of time or notice, or both, might become an Event of Default hereunder, that Lessor will permit Lessee to enforce in Lessee's own name and at Lessee's own sole expense any supplier's or manufacturer's warranty or agreement in respect of the Equipment to the extent that such warranty or agreement is assignable. Lessee acknowledges that Lessee has reviewed and approved the purchase order, Supply Contract or purchase agreement covering the Equipment purchased from the vendor or supplier thereof for lease to Lessee.

5. RENEWAL. Unless Lessee, sixty (60) days prior to the expiration of any Equipment Schedule, notifies Lessor in writing of its intentions to terminate the Equipment Schedule at its expiration date, then this Lease and the Equipment Schedule shall automatically be extended upon all of the terms and conditions as stated herein and in the Equipment Schedule for a period of one year from its expiration date, without the necessity of the execution of any further instrument or document and shall continue from year to year thereafter under the same terms and conditions until terminated.

6. WARRANT OF ATTORNEY. THE FOLLOWING SETS FORTH A WARRANT OF AUTHORITY FOR ANY ATTORNEY TO CONFESS JUDGMENT AGAINST LESSEE. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST LESSEE, LESSEE FOLLOWING CONSULTATION WITH (OR DECISION NOT TO CONSULT WITH) COUNSEL, AND WITH KNOWLEDGE OF THE LEGAL EFFECT HEREOF, HEREBY WAIVES ANY AND ALL RIGHTS LESSEE HAS, OR MAY HAVE, TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING BEFORE ENTRY OF JUDGMENT UNDER THE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA. LESSEE ACKNOWLEDGES THAT, PURSUANT TO THIS WARRANT OF ATTORNEY, LESSOR IS AUTHORIZED TO ENTER A JUDGMENT AGAINST LESSEE WHICH WILL GIVE LESSOR A LIEN AGAINST LESSEE'S REAL PROPERTY AND WHICH MAY PERMIT LESSOR TO, UTILIZING THE POWER OF STATE GOVERNMENT, SEIZE LESSEE'S PERSONAL PROPERTY INCLUDING LESSEE'S BANK ACCOUNTS. LESSEE SPECIFICALLY ACKNOWLEDGES THAT LESSOR HAS RELIED ON THIS WARRANT OF ATTORNEY IN GRANTING THIS LEASE.
UPON THE OCCURRENCE OF A DEFAULT (AS DEFINED IN PARAGRAPH 19 HEREOF) LESSEE AUTHORIZES ANY PROTHONOTARY OR ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR AND ENTER JUDGMENT AGAINST LESSEE AT ANY TIME AND FROM TIME TO TIME AND AS OF ANY TERM FOR SUCH AMOUNT AS MAY BE OWING BY LESSEE, INCLUDING, BUT NOT LIMITED TO LEASE PAYMENTS AND THE RESIDUAL PAYMENT, IF ANY, UNDER THIS LEASE WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION, AND WITH ATTORNEYS' FEES OF TWENTY PERCENT (20%) BUT IN NO EVENT LESS THAN FIVE HUNDRED DOLLARS ($500.00) AND LESSEE RELEASES ALL ERRORS IN CONNECTION WITH SUCH ACTION AND WAIVES ALL RIGHTS OF APPEAL WITH RESPECT TO THIS LEASE AS A WARRANT OF ATTORNEY. THIS CONFESSION OF JUDGMENT AND WARRANT OF ATTORNEY SHALL NOT BE EXHAUSTED BY THE USE OR ATTEMPTED USE THEREOF BUT SHALL CONTINUE IN FULL FORCE AND EFFECT AND MAY BE EXERCISED AS OFTEN AS NECESSARY UNTIL ALL AMOUNTS OWING BY LESSEE TO LESSOR PURSUANT TO THE PROVISIONS OF THIS LEASE OR ON ACCOUNT OF THE EQUIPMENT SHALL HAVE BEEN PAID IN FULL. ANYTHING CONTAINED HEREIN TO THE CONTRARY NOTWITHSTANDING, LESSOR AGREES NOT TO LEVY, EXECUTE OR GARNISH ANY RESIDENTIAL REAL PROPERTY AS PROHIBITED BY THE ACT OF JANUARY 30, 1974 (NO.6) AND REGULATIONS THEREUNDER OF THE LESSEE OR GUARANTOR. INITIALS OF LESSEE: _____

7. TERMINATION BY LESSOR. Lessor shall have the exclusive option to terminate this Lease and Lessor's obligations hereunder, if within ninety (90) days after the Schedule Date, the Equipment has not been delivered to Lessee, or Lessee has not accepted the Equipment as provided in Paragraph 12 hereof. The aforesaid option of Lessor to terminate this Lease may be exercised by giving Lessee written notice of termination pursuant to this Paragraph at any time within sixty (60) business days after expiration of the aforesaid ninety (90) day period.

8. NO CANCELLATION BY LESSEE. THIS LEASE MAY NOT BE CANCELED OR TERMINATED UNDER ANY CIRCUMSTANCES BY LESSEE.

9. USE. The Equipment shall be used exclusively for agricultural, business or other commercial purposes and shall not be used at any time during the Initial Term of Lease or any renewal term for personal, family or household purposes. In addition, the Equipment shall be used according to accepted standards of use for the Equipment in the industry or trade in which it is customarily used.

10. SUPPLIER NOT AN AGENT. Neither Supplier, nor any salesman, employee or agent of Supplier is an agent of Lessor. Neither Supplier, nor any salesman, employee or agent of Supplier is authorized to waive or alter any term or condition of this Lease and no representation as to the Equipment or any other matter by Supplier or any salesman, employee or other agent of Supplier shall in any way affect Lessee's duty to pay the Lease Payments or perform its other obligations as set forth in this Lease.

11. SELECTION AND ORDERING OF EQUIPMENT. Lessee has selected both the Equipment and Supplier named in the Equipment Schedule from whom Lessor is herein requested by the Lessee to purchase the Equipment in order to lease the same to Lessee in accordance with this Lease. Lessee acknowledges that the Equipment which it has selected is suitable for the purposes of its intended use. Lessee further acknowledges that this selection was not made pursuant to or in reliance upon the judgment, recommendations or representations of Lessor. Lessor shall order the Equipment from Supplier. Lessee shall cooperate fully in arranging for delivery of the Equipment to the address of Lessee set forth in the Equipment Schedule pertaining to the location of the Equipment, or if no such address is indicated, to such other address as Lessor shall determine.

12. DELIVERY AND INSPECTION. Lessee shall inspect the Equipment within forty-eight (48) hours after it is delivered to Lessee. Unless within such forty-eight (48) hour period Lessor receives written notice from Lessee specifying any proper objection to the Equipment, it shall be conclusively presumed, as between Lessor and Lessee that: (A) Lessee has fully inspected the Equipment, (B) the Equipment is in full compliance with the terms and conditions of this Lease; the Equipment is in good condition and repair; and (D) Lessee has accepted the Equipment. If Lessor shall request, Lessee shall promptly furnish Lessor with a written statement setting forth the matters set forth in (A), (B), 8 and (D) of this Paragraph and also approving the payment of the invoice pertaining to the Equipment or a portion thereof.

13. OWNERSHIP. The Equipment is, and shall at all times remain, the property of Lessor and Lessee shall have no right, title or interest therein or thereto except as expressly set forth in this Lease. The Equipment is, and shall at all times be and remain personal property notwithstanding that the Equipment, or any part thereof, may now be, or hereafter become, in any manner affixed or attached to any real property or any building thereon. Immediately upon demand therefor by Lessor, Lessee shall procure, for the benefit of Lessor, and deliver to Lessor landlord and mortgagee waivers, duly executed by the appropriate parties, pertaining to the Equipment in form and substance satisfactory to Lessor and in the event that Lessee refuses or is unable to procure and deliver the aforesaid waivers, Lessor shall have the right to suspend, terminate or cancel this Lease, in whole or in part, without any liability therefor, by giving notice to Lessee of such suspension, termination or cancellation, and, in addition Lessor shall have the right to declare a Default under this Lease and to exercise all rights and remedies of which Lessor is possessed pursuant to this Lease or otherwise by law or equity permitted.

14. LOCATION, LESSOR'S INSPECTION; LABELS. The Equipment shall be delivered and thereafter kept at the location specified on the Equipment Schedule, or, if none is specified, at Lessee's billing address set forth on the first page of this Lease and shall not be removed therefrom without Lessor's prior written consent. Lessor shall have the right to inspect the Equipment at any time without prior notice. If Lessor supplies Lessee with labels which state that the Equipment is owned by Lessor, Lessee shall affix and keep same in a prominent place on each item of Equipment.

15. REPAIRS, USE; ALTERATIONS. Lessee, at its own expense, shall keep the Equipment in good working condition and repair, at its own expense, furnish all labor, parts, mechanisms and devices required therefore. Lessee shall use the Equipment in a careful and lawful manner. Lessee shall not make any alterations, additions or improvements to the Equipment without Lessor's prior written consent. All replacement of the Equipment and parts, repairs, improvements, additions, accessions and accessories made to the Equipment shall immediately become a component part thereof and title thereto shall be immediately vested in Lessor and shall be included under the terms and

conditions hereof. Any such parts, replacements, repairs, improvements, additions, accessions and accessories made to the Equipment shall not be removed without Lessor's prior written consent.

16. INSURANCE. Lessee at its own expense shall insure the Equipment at all times against all hazards requested by Lessor including but not limited to fire, theft and extended coverage insurance, and such policies shall be payable to Lessor. In addition, Lessee at its own expense, shall carry public liability insurance with respect to the Equipment. All such insurance shall be satisfactory to Lessor as to form, amount and insurer and shall also name Lessor as an insured thereunder and shall provide for at least ten (10) days prior written notice of cancellation to Lessor. Such insurance policies or certificates thereof shall be delivered by Lessee to Lessor as required by Lessor. Lessee hereby assigns to Lessor all of its right, title and interest in and to any proceeds of such insurance.

17. LIENS, TAXES. Lessee shall keep the Equipment free and clear of all levies, liens, security interests and other encumbrances of any nature. In addition, Lessee shall: (A) make and file all declarations and returns in connection with all charges and taxes (local, state and federal), which may now or hereafter be imposed upon or measured by the ownership, leasing, rental, sale, purchase, possession or use of the Equipment excluding however all taxes on or measured by Lessor's net income; and (B) pay all such charges and taxes when the same become due. In the event that Lessor shall elect to make and file any declarations or returns in connection with such charges and taxes or to pay the same, then Lessee shall reimburse Lessor, immediately upon demand of Lessor, for any and all such charges and taxes applicable to the Equipment.

18. LESSOR'S PERFORMANCE OF LESSEE'S OR GUARANTOR'S OBLIGATION. If Lessee or Guarantor fails to duly and properly perform any of its obligations under this Lease, Lessor may at its option, but shall have no duty to, perform any act or make any payment which Lessor deems necessary for the maintenance and preservation of the Equipment or protection thereof or the maintenance and protection of Lessor's title thereto and interest therein, including but not limited to payments for satisfaction of levies, liens, security interests, and other encumbrances of any nature, and payment of repairs, taxes and insurance, and all sums so paid or incurred by Lessor, together with interest at the highest rate lawfully permitted and any reasonable attorneys' fees incurred by Lessor in connection therewith, shall be additional lease payments ("Additional Lease Payments") under this Lease and payable by Lessee to Lessor immediately on demand. The performance of any act or payment by Lessor as aforesaid shall not be deemed a waiver or release of any obligation or Default.

19. DEFAULT AND REMEDIES. (A) The occurrence of any one of the following events will constitute a default by Lessee hereunder ("Event of Default"): (I) failure to pay when due and payable any Lease Payment (original or renewal) or any other of Lessee's obligations under the terms hereof; (II) failure by Lessee to perform, keep and observe any term, provision, warranty, condition, covenant or representation under the terms or times hereafter any material warranty, representation, statement, report or certificate now or hereafter made or furnished to Lessor by or on behalf of Lessee is not true and correct; (iv) if any of the Equipment or all or a material part of Lessee's property is attached, seized, subjected to writ or distress warrant, or is levied upon, or comes within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors and the same is not terminated or dismissed within twenty (20) days thereafter; (v) the death of Lessee, or if the ownership of Lessee undergoes a change of more than one-half (2) of the existing ownership, or if Lessee discontinues its normal business operations for a period of ten (10) days or default or Event of Default under any agreement, by and between Lessee and Lessor (or any affiliate thereof), (x) the occurrence of a theretofore, now or at any time or times hereafter executed and delivered by Lessee to Lessor or any affiliate thereof), any instrument or document the payment of any indebtedness to any third party and such default is declared and is not cured within the time, if any, specified therefor in any agreement governing the same; (xii) if Lessee fails to notify the Lessor in writing and does not secure prior written approval from Lessor of any of the following changes regarding Lessee: legal name, entity type or structure, chief place of business or executive offices, or opening of an additional location or locations to conduct business and/or to store Lessor's Equipment; (xiii) through Lessee's actions, Lessor's interest in its Equipment is jeopardized or in any way becomes junior to any creditor; or (xiv) if for any reason the Lessor has a reasonable basis to believe that Lessee to make an assignment for the benefit of Lessee's creditors, or the filing by Lessee of any case under the Bankruptcy Reform Act of 1978, or any similar law, whether state or federal, for liquidation or rehabilitation of Lessee or of any case for the appointment of a receiver, trustee or custodian for all or a material part of the property of Lessee; (vii) the filing against Lessee of any application, proceeding or case for the appointment of a receiver, trustee or custodian for all or a material part of the property of Lessee, and any case against Lessee under the Bankruptcy Reform Act of 1978 or any similar law, whether state or federal, or of any case against Lessee for the appointment of a receiver, trustee or custodian for all or a material part of the property of Lessee, and any such application, proceeding or case is not dismissed or stayed within thirty (30) days after the filing thereof; (viii) the filing of a notice of tax lien or the existence of any other lien, claim or encumbrance with respect to any of the Equipment or all or a material part of Lessee's property; (ix) if Lessee is enjoined, restrained or in any way prevented by court order or otherwise from conducting all or a material part of its business affairs in the ordinary course and such injunction or restraint is not dismissed or stayed within thirty (30) days after the entry of such injunction or restraint. (B) Upon an Event of Default, Lessor may, at its election and without default or Event of Default under any agreement, by and between Lessee and Lessor (or any affiliate thereof), any instrument or document heretofore, now or at any time or times hereafter executed and delivered by Lessee to Lessor or any affiliate thereof, any instrument or document notice or demand, exercise any one or more of the following remedies in order to protect the interest and reasonably expected profits and bargains of Lessor: (I) upon notice to Lessee terminate this Lease and all Lease Schedules executed pursuant thereto; (ii) the occurrence of any Event of Default or any time thereafter, or if Lessor decides, in its sole discretion, not to take possession of the Equipment, Lessor continues to be the owner of the Equipment and may, but is not obligated to, dispose of the Equipment and/or otherwise, all of which determinations may be made by Lessor in its absolute discretion and for its own account; (iii) declare immediately due and payable all sums due and to become due hereunder for the full term of the Lease (including any renewal or purchase options which Lessee has contracted to pay); (iv) with or without terminating this Lease, recover from Lessee damages, not as a penalty, but herein liquidated for all purposes and in an amount equal to the sum of (a) any accrued and unpaid Lease Payments as of the date of entry of judgment in favor of Lessor plus late charges and all other sums that may accrue hereunder, (b) the present value of all future Lease Payments reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Philadelphia as of the date of entry of judgment in favor of Lessor plus one percent (1%), all commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, release or other disposition of the Equipment including reasonable attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00), and costs incurred in connection therewith or otherwise resulting from Lessee's default (inclusive of attorneys' fees, fees of collection agencies, and other costs incurred in the collection of the balance due), (d) estimated residual value of the Equipment as of the expiration of this Lease or any renewal thereof (if such Lease has been renewed), and (e) any indemnity, if then determinable. For purposes hereof, in the event that Lessee shall pay all sums due to Lessor under Sections (a) through (e) of this Paragraph, prior to the date of the entry of judgment, the date of payment shall be deemed to be the date of entry of judgment; (v) in its sole discretion, re-lease or sell any or all of the Equipment at a public or private sale on such terms and with or without notice as Lessor shall deem reasonable, at Lessor's place of business, and recover from Lessee damages, not as a penalty, but herein liquidated for all purposes and in an amount equal to the sum of: (a) any accrued and unpaid Lease Payments as of the later of the date of default or the date that Lessor has obtained possession of the Equipment, plus late charges that may accrue hereunder, made an effective tender of possession of the Equipment back to Lessor ("Default Date") plus Lease Payments (at the rate provided for in the Lease and any Lease Schedule) for the additional period (but in no event longer than four (4) months) that it takes Lessor to resell or remarket all of the Equipment, plus late charges and all other sums that may accrue hereunder; (b) the present value of all future Lease Payments reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Philadelphia as of the Default Date plus one percent (1%); all commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-lease or other disposition of the Equipment including attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00) and costs incurred in connection with or otherwise resulting from Lessee's default, (d) estimated residual value of the Equipment as of the expiration of this Lease or any renewal thereof if such Lease has been renewed; and (e) any indemnity, if then determinable: LESS the amount received by Lessor upon such public or private sale or re-lease of such items of Equipment, if any; (vi) if (a) Lessor elects not to sell, re-lease or otherwise dispose of all or part of the Equipment or (b) does so by a re-lease which is not made in a manner substantially similar to the Lease or any applicable Lease Schedule or if the measure of damages under Subparagraphs (B) (iii) and (iv) above are not allowable under any applicable law, Lessor may recover the market value, if any, as of the Default Date of the Lease Payment

3

reasonably estimated by Lessor to be obtainable for the Equipment during the remaining Lease term or any renewal thereof then in effect, plus any accrued and unpaid Lease Payments as of the Default Date; (vii) exercise any other right or remedy which may be available to it under the Uniform Commercial Code or any other applicable law; (viii) a termination hereunder shall occur only upon notice by Lessor and only as to such items of Equipment as Lessor specifically elects to terminate and this Lease shall continue in full force and effect as to the remaining items, if any; (ix) if this Lease is deemed at any time to be one intended as security, Lessee agrees that the Equipment shall secure, in addition to the indebtedness set forth herein, indebtedness at any time owing by Lessee to Lessor; (x) Lessor shall have the right to apply Lessee's security deposit to reduce the amount of Lessee's obligations and proceed against Lessee for any remaining sums owed.  No remedy referred to in this Paragraph is intended to be exclusive, but shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor in law or in equity.  If Lessee fails to perform any of the provisions under this Lease or any other agreement with Lessor, or Lessee makes a bulk transfer of furniture, furnishings, fixtures, or other equipment or inventory, Lessor shall have the right to exercise any remedy available at law or in equity, including, but not limited to seeking damages or specific performance and/or obtaining an injunction and/or exercising the Warrant of Attorney and Confession of Judgment more fully set forth in Paragraph 6 and in any guaranty. (D) No right or remedy herein conferred upon or reserved to Lessor is exclusive of any right or remedy herein or by law or in equity or provided or permitted, but each shall be cumulative of every other right or remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise, and may be enforced concurrently therewith or from time to time, but Lessor shall not be entitled to recover a greater amount in damages than Lessor could have gained by receipt of Lessee's full, timely, and complete performance of its obligations pursuant to the terms of this Lease plus accrued delinquent payments under Paragraph 25

20.  LESSEE'S WAIVERS.  To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, but not limited to Lessee's rights to: (A) cancel this Lease; (B) repudiate this Lease; (C) reject the Equipment; (D) revoke acceptance of the Equipment; (E) recover damages from Lessor for any breaches of warranty or for any other reason; (F) a security interest in the Equipment in Lessee's possession or control for any reason; (G) deduct all or part of any claimed damages resulting from Lessor's default, if any, under this Lease; (H) accept partial delivery of the Equipment; (I) "cover" by making any purchase or lease of or contract to purchase or lease equipment in substitution for those items due from Lessor; (J) recover any general, special, incidental or consequential damages, for any reason whatsoever; (K) specific performance, replevin, detinue, sequestration, claim and delivery of the like for any Equipment identified to this Lease.  To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Paragraph 19 or which may otherwise limit or modify any of Lessor's rights or remedies under Paragraph 19.  Any action by Lessee against Lessor for any default by Lessor under this Lease, including breach of warranty or indemnity, shall be commenced within one (1) year after any such cause of action occurs.

21.  LESSOR'S EXPENSES.  Lessee shall pay to Lessor all expenses, including but not limited to reasonable attorneys' fees incurred by Lessor in enforcing any of the provisions hereof or in exercising any rights or remedies of Lessor hereunder or by law or equity permitted.

22.  INDEMNITY.  Lessee hereby warrants and covenants that Lessee shall indemnify and hold Lessor harmless of and from any and all liability, loss, damage, cost and expense, including but not limited to reasonable attorneys' fees, arising out of or otherwise pertaining in any way to the Equipment, this Lease or any injury to persons or property of any nature resulting from, pertaining to or based upon the actual or alleged manufacture, selection, purchase, sale, ownership, lease, delivery, possession, transportation, use or operation of the Equipment or its location or condition, or any other interest of Lessor in the Equipment or this Lease or any activity, forbearance or omission by Lessor with respect to the Equipment or this Lease.  In addition, Lessee, immediately upon demand by Lessor, shall satisfy, pay and discharge any and all judgments and fines which may be assessed or recovered against Lessor in any action pertaining to any of the aforesaid.

23.  LOSS OR DAMAGE.  Lessee shall bear the entire risk of loss, theft, destruction, or damage of Equipment or any portion thereof from any cause whatsoever.  The liability of Lessee to pay Lessee's payments thereof may be discharged by paying the Lessor a "Casualty Loss Payment" which shall be payment in an amount equal to the total of the following: (A) any accrued and unpaid Lease Payments as of the date of receipt of such payment by Lessor plus late charges and all other sums that may accrue hereunder; (B) the present value of all future Lease Payments reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Philadelphia as of the date of receipt of such payment by Lessor plus one percent (1%), if all commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the Equipment including attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00) and costs incurred in connection therewith or otherwise resulting from Lessee's default (inclusive of attorneys' fees, fees of collection agencies, and other costs incurred in the collection of the balance due); (D) estimated residual value of the Equipment as of the expiration of this Lease or any renewal thereof (if such Lease has been renewed); and (E) any indemnity, if then determinable.  Except as provided in the preceding sentence, the total or partial destruction of any Equipment, or total or partial loss of use or possession thereof by Lessee, shall not release or relieve Lessee from the duty to pay the Lease Payments herein provided.  Lessor shall not be obligated to undertake by litigation or otherwise, the collection of any claim against any person for loss or damage of the Equipment.

24.  SURRENDER.  At the expiration or other termination of this Lease or upon demand by Lessor following a Default, Lessee, at its own expense, shall immediately return the Equipment in as good condition as received less normal wear and tear, by delivering it packed and ready for shipment, to such place or on board such carrier as Lessor may require.

25.  SERVICE CHARGE AND INTEREST.  If Lessee fails to pay when due any Lease Payment, Renewal Lease Payment, Additional Lease Payment or other amount required herein to be paid to Lessor, and in order to defray the additional costs incurred by Lessor, Lessee or Guarantor shall pay to Lessor a service charge of five percent (5%) of such amount or part thereof which shall be delinquent, or ten dollars ($10.00), whichever is greater, plus interest on such delinquent amount over the minimum service charge at eighteen percent (18%) per annum or the maximum rate allowable by law.

26.  NOTICES.  Service of all notices under this Lease shall be sufficient if given personally or mailed to the party involved at its respective address set forth above, or at such other address as said party may provide in writing to the other from time to time.  Any such notice mailed to said address shall be effective when deposited in the United State mail, duly addressed and with postage prepaid.

27.  SECURITY DEPOSIT.  When any Equipment Schedule provides for a security deposit, Lessor may, but shall not be obligated to, apply the security deposit to cure any Default, in which event Lessee shall promptly restore in full the security deposit.  Upon termination of this Lease and all renewals hereof and all Equipment Schedule(s), if Lessee has fulfilled all the terms and conditions hereof and no Default shall have occurred, Lessor shall return to Lessee any remaining balance of the security deposit.  No security deposit shall earn interest.

28.  ASSIGNMENT.  Without Lessor's prior written consent, Lessee shall not (A) assign, transfer, pledge, hypothecate or otherwise dispose of the Lease, the Equipment, or any interest therein, or (B) sublet or lend the Equipment or permit it to be used by anyone other than Lessee or Lessee's employees.  Lessor may assign, grant a security interest in, or otherwise transfer this Lease or the Equipment, in whole or in part, without notice to Lessee.  However, if Lessee is given notice of such assignment, grant or transfer Lessee shall acknowledge receipt thereof in writing.  Each such assignee, grantee, secured party or other transferee shall have all of the rights, but none of the obligations, if any exist, of Lessor under this Lease.  Lessee shall not assert against any assignee, grantee, secured party or other transferee of Lessor any defense, counterclaim or offset that Lessee may have against Lessor.  Notwithstanding any such assignment, grant or transfer Lessor warrants that so long as no Default shall have occurred Lessee shall quietly enjoy use of the Equipment subject to the terms and conditions of this Lease.  Subject to the foregoing, this Lease inures to the benefit of and is binding upon the heirs, legatees, personal representatives, successors and assigns of the parties hereto.

29.  SEVERABILITY.  If any provision of this Lease or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this Lease and the application of such provision to other parties or circumstances shall not be affected thereby and to this end in provisions of this Lease are declared severable.

30.  NO ORAL AGREEMENT.  All prior conversations, agreements and representations relating to this Lease or to the Equipment are integrate herein.  None of the terms or conditions of this Lease shall be changed or modified except in writing duly executed by both Lessor and Lessee.

31.  CAPTIONS.  The captions or headings of each Paragraph of this Lease do not constitute part of this Lease, but are for information

-4-

...

ACCEPTANCE OF MASTER LEASE AGREEMENT
AND SCHEDULE "A"
November 18, 2014
BETWEEN
FMC2 INC.
AND
AUTO BOUTIQUE

| LEASE # | SERIAL NUMBER | CAP COST INVOICE | TERM | MONTHLY PAYMENTS | LEASE END BUYOUT | YEAR | MAKE | MODEL | COLOR | TAG# | BANK FEE | PRO-RATED RENT | TAG & TITLE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FMC11669 | 3VW2K7AJ6FM216627 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4706 | $149.00 | $149.80 | $160.00 |
| FMC11670 | 3VW2K7AJ7FM210391 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4707 | $149.00 | $149.80 | $160.00 |
| FMC11671 | 3VW2K7AJ5FM233624 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4708 | $149.00 | $149.80 | $160.00 |
| FMC11672 | 3VW2K7AJ4FM245092 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4709 | $149.00 | $149.80 | $160.00 |
| FMC11673 | 3VW2K7AJ3FM233628 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4710 | $149.00 | $149.80 | $160.00 |
| FMC11674 | 3VW2K7AJ5FM211659 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4711 | $149.00 | $149.80 | $160.00 |
| FMC11675 | 3VW2K7AJ2FM210394 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4712 | $149.00 | $149.80 | $160.00 |
| FMC11676 | 3VW2K7AJ3FM233826 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4713 | $149.00 | $149.80 | $160.00 |
| FMC11677 | 3VW2K7AJ6FM233350 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | BLACK | JST-4714 | $149.00 | $149.80 | $160.00 |
| FMC11678 | 3VW2K7AJ9FM212228 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | WHITE | JST-4715 | $149.00 | $149.80 | $160.00 |
| FMC11679 | 3VW2K7AJ6FM233931 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | BLACK | JST-4716 | $149.00 | $149.80 | $160.00 |
| FMC11680 | 3VW2K7AJ3FM220786 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | BLACK | JST-4717 | $149.00 | $149.80 | $160.00 |
| FMC11681 | 3VW2K7AJ3FM212168 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | BLACK | JST-4718 | $149.00 | $149.80 | $160.00 |
| FMC11682 | 3VW2K7AJ9FM232470 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | BLACK | JST-4719 | $149.00 | $149.80 | $160.00 |
| FMC11683 | 3VW2K7AJ0FM212994 | $15,732.00 | 18 MONTHS | $374.00 | $10,800.00 | 2015 | VW | JETTA S | BLACK | JST-4720 | $149.00 | $149.80 | $160.00 |

1900 MILES ALLOWED PER MONTH ON 18 MONTH LEASE
OVER MILEAGE CHARGE IS $.35 PER MILE

IF CARS ARE RETURNED TO FMC2 INC. AT THE END OF TERM THEY ARE FOB FEASTERVILLE, PA

LEASE TERM IS 18 MONTHS FROM DECEMBER 1, 2014 ALL LEASE PAYMENTS ARE DUE ON THE FIRST OF EACH MONTH.

IT IS UNDERSTOOD AND AGREED that this Agreement and Schedule "A" is hereby made part of the Master Vehicle Lease Agreement between the Parties hereto dated the 18th day of November, 2014 and that all of the terms and conditions of said Vehicle Lease Agreement are incorporated by reference as the agreement between the Parties upon Lessee signing this Agreement.

LESSOR: FMC2 INC.
By:
Title:
Date:

LESSEE: AUTO BOUTIQUE
By:
Title:
Date:

Exhibit "B"

# LEASE GUARANTY

## LEASE#412395-412404

I,(We) the person(s) signing as "Guarantor(s)" below, for good and valuable consideration, jointly and severally guarantee(s) the full performance of the Lease by the Lessee and agree to be governed by all provisions of this Lease as to Lessee. I(We) agree that Lessor need not take any action against the Lessee, any other guarantor or any person, firm, corporation or entity or resort to any security held by Lessor at any time before acting against any one of the Guarantors.  The liability of any one of the Guarantors is separate and apart from the liability of any other Guarantor and will continue despite the revocation of the guaranty by any other Guarantor(s).

GUARANTOR: _____   DATE: _10/7/15_
HOWARD S ELFAND

GUARANTOR: _____   DATE: _10/7/15_
YOUSSEF AZIZ

Exhibit "C"



# FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** is made as of June 17, 2016, between Auto Boutque of South Florida Inc, a Corporation and Howard Elfand and Youssef Aziz (the "Guarantor", together with Lessee, the "Obligors", individually and collectively as requires), as Obligors, and Fleetway Leasing with a principal place of business located at 336 West Street Road, Feasterville, PA 19053 (called together with its successors and assigns and/or subsequent holder of this Agreement, the "Lessor").

## BACKGROUND

A. On June 1,2016, Lessee entered into a Master Lease Agreement (hereinafter "Master Lease"), with Lessor for the lease of various scheduled vehicles in a commercial transaction between the parties (hereinafter the "Leased Vehicles").

B. All of the documents, agreements, instruments and certificates executed and/or delivered by an Obligor to the Lessor relating to, pertaining to, or in connection with, the Master Lease, are collectively referred to as the "Master Lease Documents".

C. Guarantor, to the Master Lease Agreement, personally guaranteed all of the obligations as set forth in the Master Lease Documents and did so specifically as stated in the duly executed Personal Guarantee. **It is expressly understood that such Personal Guarantee was executed by the Guarantor with the understanding that in the event any contractual obligations associated with the Master Lease Agreement were not timely satisfied, such would be the contractual and legal obligation(s) of the Guarantor by such means as agreed to in the Personal Guarantee.**

D. Obligors have requested Lessor to forbear from exercising its otherwise existing remedies pursuant to the Master Lease Documents and Master Lease Agreement with respect to such Existing Defaults and indebtedness.

E. Guarantor has guaranteed payment of the indebtedness pursuant to the duly executed Personal Guaranty.

F. In this Agreement, "Indebtedness" means all indebtedness and contractual obligations that Lessee now, and in the future, owes to Lessor.

G. The invoices for June 1, 2016, due under the terms of the Master Lease Documents and Agreement have not been paid by the Lessee and, accordingly, the Obligors are not in full compliance with, and subsequently are in default, of the terms and their respective obligations under the Master Lease Documents and Agreement (hereinafter "Existing Defaults").

H. Subject to the terms of this Forbearance Agreement, the Lessor has agreed to such forbearance, without waiving any of its legal rights and remedies otherwise hereby so entitled to exercise against either/or the Lessee and/or the Guarantor.

## TERMS AND CONDITIONS

**NOW, THEREFORE,** in consideration of this Agreement and for other good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the parties hereto intending to be legally bound hereby agree as follows;

1. **BACKGROUND;** The foregoing Background information is hereby incorporated herein as if fully set forth in full, and the Obligors acknowledge and agree that the information in the Background section is true, accurate and complete to an adequate certainty.

2. **FORBEARANCE;** Subject to the Obligor's compliance with each of the terms and conditions of this Agreement, including without limitation satisfaction of the Forbearance Obligations (as defined herein), the Lessor, without waiving, curing or ceasing the continuance of the Existing Defaults, agrees not to exercise, or enforce, any right or remedy to which the Lessor is entitled in respect of the Master Lease Documents from the date hereof until the earlier of (i) the occurrence of an Event of Default (as defined herein), and (ii) June 1, 2017, (hereinafter the "Forbearance Period"); provided that such forbearance shall in no way; (a) relieve the Obligors from any liability under the Master Lease Agreement; or (b) constitute a waiver of the

Lessor's right to exercise any and all remedies available to it upon termination of the Forbearance Period. The Forbearance Period shall terminate on the Expiration Date. Notwithstanding the foregoing, if, during the Forbearance Period, any Event of Default, other than the Existing Defaults, shall occur under this Agreement or the other Master Lease Documents, then the Forbearance Period automatically and immediately shall terminate. **Lessor does not waive any Existing Defaults under the Master Lease Documents, and neither this Agreement, nor the continued performance by Lessee under the Master Lease Documents shall constitute such a waiver. Lessor makes no commitment of any kind to renew, or restructure, the indebtedness or to extend the Forbearance Period at any time in the future and shall the right to exercise all available remedies on Default, or expiration of the Forbearance Period.**

3.  **FORBEARANCE OBLIGATIONS;** Lessor's Agreement to forbear under the terms of this Forbearance Agreement are subject to, and contingent upon, the following Forbearance Obligations (hereinafter "Forbearance Obligations").

    a.  The Lease Invoices in accordance with the attached schedule (See **Attachment A – Lease Invoice Schedule**);
    b.  Upon the failure of Lessee to make payment of any of the Installments set forth in **Attachment A – Lease Invoice Schedule**, the full amount of the Lease Invoices, minus any installment previously paid, will become immediately due and owing;
    c.  Each of the Installments agreed upon will be paid by an automatic draft of the Lessee's bank account on Monday of each week by Lessor pursuant to the Lease Customer Authorization for Draft Payment via ACH Debits document signed by the Lessee on _____ (hereinafter the "Draft Authorization").
    d.  All other obligations under the Master Lease Documents shall be maintained by the Lessee and kept current, which payments shall be made by an automatic draft of the Lessee's bank account pursuant to the Draft Authorization.

4.  **COVENANTS;** Each Obligor to this Agreement hereby covenants and agrees that from the date hereof and until satisfaction in full of the contractual Obligations (as hereinafter defined), unless the Lessor shall otherwise consent in writing:

    a.  Compliance – Obligors covenant and agree to comply with the terms and provisions of the Master Lease Documents in this Agreement.
    b.  Additional Information – Obligors covenant and agree to promptly provide Lessor with any information or documents reasonably requested by Lessor.

5.  **ACKNOWLEDGMENTS AND AGREEMENTS;** The Obligors hereby unconditionally and unequivocally acknowledge and agree that;

    a.  The Lease Invoices under the terms of the Master Lease Documents are and remain unpaid and are due and owing;
    b.  That by not paying the Lease Invoices under the terms of the Master Lease Documents, Lessee is in material breach of contract and Obligors are responsible for said breaches and have no defenses for their contractual breach;
    c.  As a result of the Existing Default(s), the Lessor may exercise all of its rights and remedies under the Master Lease Documents;
    d.  The Lessor has fully performed and satisfied its duties and obligations under the Master Lease Agreement owed to Lessee and through the application of this Forbearance Agreement, does not waive any rights and remedies hereunder.
    e.  Before execution and delivery of this Forbearance Agreement, the Lessor had no obligation to modify, extend, or otherwise amend the terms and conditions of the Master Lease Documents or to negotiate with the Obligors, or any other person or entity concerning any of the foregoing. The Obligors to this Agreement hereby agree that the Lessor's execution of this Agreement does not create any such obligation, other than what is expressly set forth herein;
    f.  The Obligors do not have any claims, or set-offs, against the obligations of payment and performance required of Obligors under the Master Lease Documents (the "Obligations"), nor do they have any defenses to, or counterclaims respecting, the enforcement or administration of the Obligations or under applicable law, equity and/or otherwise;
    g.  The Obligors have made their own decisions regarding all of their respective operations and their incurrence and payment of all third party debt and all other payments;
    h.  The execution and delivery of this Agreement by the Obligors was, and is, their free and voluntary act and deed, without apprehension as to the effect thereof, and without any coercion, duress, overreaching, or any misconduct by the Lessor or any agent of the Lessor. Further, Obligors have had a full and fair opportunity to have this Agreement reviewed by independent counsel and wish to proceed as to same.
    i.  The security interests, if any, granted by an Obligor under any of the Master Lease Documents is valid, properly perfected, and in first priority, where appropriate;

    i.   The security interests, if any, granted by an Obligor under any of the Master Lease Documents is valid, properly perfected, and in first priority, where appropriate;

    j.   If any Obligor breaches or defaults under this Agreement, any such breach or default shall be a Default or Event of Default under all of the other Master Lease Documents.

6.    **REAFFIRMATION;** The parties hereto agree that all of the Master Lease Documents remain and shall continue in full force and effect, except as expressly modified hereby, and are valid, binding, and, except as set forth herein, are enforceable, and the Obligors hereby ratify, affirm, and confirm the Master Lease Documents and all of their duties and obligations thereunder. It is expressly understood that no modification of the Master Lease Documents may occur without a validly and duly executed written instrument.

7.    **RELEASE OF THE LESSOR;** In consideration for the Lessor's agreements hereunder, the Obligors, on behalf of themselves and their successors, assigns, and affiliates, and any person claiming through them, hereby release and discharge the Lessor and its predecessors, successors, assigns, directors, officers, members, agents, employees, representatives, affiliates, and attorneys (collectively the "Releasees") of and from, and hereby waive and covenant not to bring any action against the Releasees regarding, any and all claims, rights, actions, demands, injuries, damages, compensation, or causes of action of every kind and nature, contingent or actual, liquidated or unliquidated, whether in tort or contract, which the Obligors have against any of the Releasees, or which might, or could arise, under State, Federal, or local law, including common law, except for any claims arising from a breach of this Agreement.

8.    **REPRESENTATIONS AND WARRANTIES;** Each Obligor represents and warrants that the concepts embodied in this Agreement have been voluntarily and independently negotiated by and between the parties hereto.  This Agreement is satisfactory to each of the parties to this Agreement, and each such Obligor understands the terms of this Agreement and intends to fully perform and be bound by this Agreement.

    a.   Each Obligor acknowledges and agrees that each Obligor has fully read, understands, and voluntarily enters in this Agreement.  Each Obligor further acknowledges and agrees that the Obligor has been represented, or has had the opportunity to be represented, by counsel of the Obligor's own choosing during the negotiations that led to this Agreement.

    b.   The Lessee and, where applicable, its general partner and/or Guarantor, represents and warrants that it is duly created, validly existing and in good standing under the law of the state of its organization and that the party signing on behalf of it is authorized on its behalf to execute and deliver this Agreement, and any other instrument executed and delivered in connection herewith, and upon such execution and delivery each such entity shall be bound by all duly executed instruments.

    c.   Each Obligor represents and warrants that such Obligor has the legal right, power, capacity and authority to enter into and perform such Obligor's covenants, obligations and agreements under this Agreement and the other instruments referenced herein and delivered pursuant hereto, all corporate, company, partnership and other actions required in connection with the authorization, execution, delivery and performance of this Agreement by such Obligor have been duly taken and, when executed and delivered by such Obligor, this Agreement shall constitute the legal, valid and binding obligation of such Obligor, enforceable against such Obligor in accordance with its terms.

    d.   Each Obligor represents and warrants that neither the execution and delivery of this Agreement, nor consummation of any of the transactions contemplated herein, nor compliance with the terms and provisions hereof, will contravene any provision of law, statute, rule, or regulation to which Obligor is subject to any judgment, decree, license, order or permit applicable to such Obligor, or will conflict or will be inconsistent with, or will result in any breach of any of the terms of the covenants, conditions, or provisions of, or constitute a delay under any other obligation of such Obligor.

    e.   Each Obligor represents and warrants that no consent, approval, authorization or order of any Court, or governmental authority, is required in connection with the execution, delivery and performance by any party to this Agreement.

9.    **EVENTS OF DEFAULT;** except for the Existing Defaults described herein, each of the following shall constitute an event of default (hereinafter "Event of Default") under this Agreement.  A breach of, or default, under any term of this Agreement, including, but not limited to, a breach of or default as to any of the Forbearance Obligations set forth in Paragraph 3 hereof, or a breach, default or Event of Default, under any of the Master Lease Documents, as amended by this Agreement between the parties.  Upon the occurrence of an Event of Default, Lessor may exercise any right, or remedy, available under any Master

Lease Documents, this Agreement, or applicable law, whether in equity or at law, including but not limited to, confessing Judgment against any Obligor(s).

10. **CONFESSION OF JUDGMENT;** EACH OF THE OBLIGORS TO THIS AGREEMENT HEREBY EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD, AFTER THE OCCURRENCE OF ANY EVENT OF DEFAULT HEREUNDER, TO APPEAR FOR SUCH OBLIGOR AND, WITH OR WITHOUT COMPLAINT FILED, CONFESS JUDGMENT, OR A SERIES OF JUDGMENTS, AGAINST SUCH OBLIGOR IN FAVOR OF THE LESSOR OR ANY HOLDER HEREOF FOR THE ENTIRE AMOUNT DUE HEREUNDER, ALL ACCRUED INTEREST, TOGETHER WITH COSTS OF SUIT AND AN ATTORNEY'S FEE OF FIVE (5%) PERCENT OF THE AMOUNT DUE, AND FOR DOING SO, THIS AGREEMENT OR A COPY VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT. EACH OF THE OBLIGORS HEREBY FOREVER WAIVE AND RELEASE ALL ERRORS IN SAID PROCEEDINGS AND ALL RIGHTS OF APPEAL AND ALL RELIEF FROM ANY AND ALL APPRAISEMENT, STAY OR EXEMPTION LAWS OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED. INTEREST ON ANY SUCH JUDGMENT SHALL ACCRUE AT EIGHT PERCENT (8%) PER ANNUM.

Initials:

BEING FULLY AWARE OF THEIR RIGHTS TO PRIOR NOTICE AND HEARING ON THE VALIDITY OF ANY CLAIMS THAT MAY BE ASSERTED AGAINST THEM BY THE LESSOR UNDER THIS AGREEMENT BEFORE JUDGMENT CAN BE ENTERED AND BEFORE ASSETS OF AN OBLIGOR CAN BE GARNISHED AND ATTACHED, EACH OBLIGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO THE LESSOR, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, ENTERING JUDGMENT AGAINST OBLIGORS BY CONFESSION AND ATTACHING AND GARNISHING THE LESSOR ACCOUNTS AND OTHER ASSETS OF AN OBLIGOR, WITHOUT PRIOR NOTICE OR OPPORTUNITY FOR A HEARING, EACH OBLIGOR ACKNOWLEDGES THAT IT HAD THE OPPORTUNITY TO OBTAIN THE ASSISTANCE OF LEGAL COUNSEL IN THE REVIEW AND EXECUTION OF THIS AGREEMENT.

Initials:

NO SINGLE EXERCISE OF THE FOREGOING POWER TO CONFESS JUDGMENT, OR A SERIES OF JUDGMENTS, SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND IT MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS THE LESSOR SHALL ELECT UNTIL SUCH TIME AS THE LESSOR SHALL HAVE RECEIVED PAYMENT IN FULL OF THE AMOUNT DUE HEREUNDER.

Initials:

11. **EXPENSES;** Obligors acknowledge that Lessor is entitled to payment of, and agrees to pay, all expenses, including but not limited to actual attorney fees incurred by Lessor before or after the date of this Agreement in connection with (1) enforcing or exercising its rights under the Master Lease Documents and this Agreement, (2) negotiating, preparing, and executing this Agreement, (3) protecting and enforcing its rights in all collateral, and (4) collecting all amounts owed and during pursuant to the Master Lease Agreement.

12. **ENTIRE AGREEMENT;** This Agreement contains all of the understandings with respect to its subject matter, supersedes any prior oral or written agreement, and shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, successors, and assigns.

13. **COUNTERPARTS;** This Agreement may be signed in any number of counterparts. All counterparts shall be considered to be originals and together shall constitute but one and the same document.

14. **TIME IS OF THE ESSENCE;** Time is of the essence as to each term and provision of this Agreement.

15. **AMENDMENTS;** Neither this Agreement, nor any of its provisions can be changed, waived, amended, or modified, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, amendment, or modification is sought.

16. **INDEMNITY;** Each of the Obligors agree to indemnify the lessor, its affiliates, directors, officers, employees, agents, attorneys, shareholders and consultants and each legal entity, if any, who controls the Lessor (the "Indemnified Parties") and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever (including all fees and charges of internal or external counsel with whom any Indemnified party may consult and all expenses of litigation or preparation therefor, whether or not such Indemnified Party shall be designated a party thereto) which any indemnified party may incur or which may be asserted against any Indemnified Party as a result of the execution of or performance under this Agreement or the Master lease Documents; provided, however, that the foregoing indemnity agreement shall not apply to claims, damages, losses, liabilities, expenses, obligations, penalties, actions, judgments, suits, costs or willful misconduct, as finally determined by a court of competent jurisdiction. If and to the extent that the foregoing obligations of the Obligors under this Section, or any other indemnification obligation of any of the Obligors hereunder or under any Master lease Documents is unenforceable for any reason, Obligors hereby agree to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable law. The indemnity agreement contained in this Section shall survive the termination of this Agreement and the Master Lease Documents.

17. **NOTICES;** Service of all notices under this Lease shall be sufficient if given personally, or mailed, to the party involved at its respective address set forth above, or at such other address as said party may provide in writing to the other from time to time. Any such notice mailed to said address shall be effective when deposited in the United States mail, duly addressed and with postage prepaid and shall be considered actual and legally effective Notice.

18. **SEVERABILITY;** If any provision of this Agreement, or the application thereof, to any party or circumstance is held invalid or unenforceable, the remainder of this Agreement and the application of such provision to other parties or circumstances shall not be affected thereby and to this end, the provision of this Agreement is declared severable.

19. **NO ORAL AGREEMENTS;** All prior conversations, agreements and representations relating to this Agreement is integrated herein. None of the terms, or conditions, of this Agreement shall be changed or modified except in writing duly executed by Lessor and Obligor.

20. **LAW AND JURISDICTION;** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA. OBLIGORS AGREE THAT ANY ACTIONS OR PROCEEDING TO WHICH LESSOR IS A PARTY ARISING DIRECTLY OR INDIRECLTY FROM THIS AGREEMENT, SHALL BE LITIGATED, AT LESSOR'S OPTION, IN ANY STATE OR FEDERAL COURT HAVING SITUS WITHIN THE COMMONWEALTH OF PENNSYLVANIA, AND THAT SAID COURT SHALL HAVE JURISDICTION THEREOF.

21. **WAIVER OF JURY TRIAL.** BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY HEREUNDER.

22. **BANKRUPTCY AND RELIEF FROM STAY;** This Agreement and the rights and obligations contained in it shall, unless Lessor elects otherwise, survive the filing of a proceeding in bankruptcy by or against Obligors and shall be binding on a trustee appointed in a bankruptcy proceeding (whether voluntary or involuntary). If Obligors becomes the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization, or similar proceeding, federal or state, voluntary or involuntary, under any present or future law, Lessor shall be entitled to the automatic and absolute lifting of any automatic stay as to the enforcement of its remedies under the Master Lease Documents, including specifically, but not limited to, the stay imposed by section 362 of the United States Bankruptcy Code, as amended (11 U.S.C. 362). Each Obligor consents to the immediate lifting of the automatic stay and will not contest a motion by Lessor to lift the stay.

23. **MODIFICATIONS**; This Agreement, as well as any exhibits, addenda and amendments, contain the entire understanding of the parties and merge all oral understandings. Any modifications, changes, or amendments may be made only in a writing duly signed by Obligors and Lessor. Failure of either party to enforce any right shall not be deemed a waiver of such right.

LESSEE:                                                          LESSOR:

_____                                          _____

BY: _____                                      BY: _____

NAME: HOWARD ELPAND                                              NAME: _____

TITLE: PRES                                                       TITLE: V. PPN

GUARANTOR: _____

[Insert name of Guarantor]

Exhibit "D"



**REALEASES**

# COMMERCIAL MOTOR VEHICLE LEASE AGREEMENT

**THIS COMMERCIAL MOTOR VEHICLE LEASE AGREEMENT** is made and entered into on __JUNE 17, 2016__ by and between **FLEETWAY LEASING CO** with a principal place of business located at 336 West Street Road, Feasterville, PA 19053 ("Lessor"), and ___**AUTO BOUTIQUE OF SOUTH FLORIDA INC**_____, with its mailing address and principal place of business located at ____**3975 NW 25th STREET MIAMI, FL 33142**_____ ("Lessee").

## TERMS AND CONDITION

It is duly noted as set forth herein, both Lessor and Lessee **FULLY INTEND TO BE LEGALLY BOUND** and hereby agree as follows;

1.  **LEASE;** Subject to the terms and conditions hereof and upon written acceptance signed at Lessor's office by an authorized employee of Lessor, Lessor agrees to lease designated Vehicles to Lessee and Lessee hereby leases from Lessor the vehicles listed in each Vehicle Schedule, or if separately scheduled, in the schedule hereto annexed, as "Schedule A" and made a part of this Agreement hereof. Each Vehicle Schedule shall be made a part of this Master Lease ("Lease") upon execution and delivery of the vehicles covered thereby. Lessee requests Lessor to purchase the Vehicles from its supplier and to lease Vehicles to Lessee upon the terms and conditions of the Lease and Vehicle Schedule(s), including but not limited to the NO WARRANTIES provision contained in Paragraph 4 and the WARRANT OF ATTORNEY provision contained in Paragraph 6 and have caused this Lease to be executed by their duly authorized agents and/or officers. Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in this Lease the serial numbers, and other identification data pertaining to the vehicle when the same are determined by the Lessor.

2.  **TERM;** The Term ("Term") of this Lease commences upon the date set forth above, or the date Lessor accepts this Lease, whichever occurs later, and shall continue in effect so long as the Term of a Vehicle Schedule executed pursuant hereto remains in effect. The Term of each Vehicle Schedule shall be for the period set forth therein and shall commence on the date which Lessor accepts the Vehicle Schedule and ends upon the expiration of the number of months specified in the Vehicle Schedule as "Initial Term of Lease" after the "Payment Commencement Date". Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in this Lease as the "Payment Commencement Date". Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in this Lease as "Payment Commencement Date" the date upon which the Vehicle is delivered to and accepted by Lessee or any later date selected by Lessor, In action to the authority granted to Lessor in this Paragraph and in Paragraph 1 hereof, Lessee hereby authorizes Lessor and appoints Lessor as its attorney in fact to insert in the Lease any additional information necessary to complete the Lease and in furtherance of such authorization, to complete any blank space in the Lease with the appropriate information, and such additional information shall become part of this Lease.

3.  **LEASE PAYMENTS;** During the Term of this Lease and Vehicle Schedule(s), and without deduction, reduction set off or counterclaim, Lessee shall pay all lease payments ("Lease Payments") in advance in such amounts (based upon the Amount of Each Monthly Lease Payment and applicable tax) and at such intervals (monthly, quarter or otherwise) as shall be consistent with the Vehicle Schedule. The monthly due date and the due date for the first payment will be set by Leasing Company, may, but will not be, more than 30 days from the day you accept delivery of the Vehicle. Leasing Company may charge you a partial payment for the time between the delivery date and the date the first regular payment is due. The first Lease payment shall be due and payable on the date set forth and the "Payment Commencement Date" shall be applicable to the payment period commencing on the date as the "Payment Commencement Date." Subsequent Lease Payments shall be due and payable in advance as follows: (A) if the designation "Lease Payments Will Be Made" is marked "Monthly", then on the same date of each subsequent month of the Term as the Payment Commencement Date; (B) if the designation is marked "Quarterly", then on the same date of each subsequent quarter thereafter during the Term as the Payment Commencement Date; and if the aforesaid designation is marked "Other", on such dates as set forth on the Vehicle Schedule, or if separately scheduled, in the schedule hereto annexed, marked "Schedule B" and made a part hereof. In the event of any disagreement between Lessor and Lessee, as to the amount of the Lease Payment, which should be paid, or as to the date upon which Lease Payments should be made, the reasonable determination of the Lessor shall prevail and Lessee shall make such payments as directed by Lessor. Lease Payments shall be due and payable whether or not Lessee has received any notice that such payments are due. All Lease Payments shall be paid to Lessor at its address set forth above or as otherwise directed by Lessor in writing. No portion of any Lease payment shall be deemed to be paid to Lessor at its address set forth above or as otherwise directed by Lessor in writing. No portion of any Lease Payment shall be deemed to constitute payment for any equity interest in the Vehicle(s). In no event, shall any advance Lease Payments of any other amounts paid by Lessee in advance pursuant to the provisions of the Lease or otherwise bear interest. **Any payments made three (3) calendar days after the designated payment date shall be considered late. Late payments will be charged in the amount of $25.00 per vehicle and payable immediately.**

4. NO WARRANTIES. LESSEE AGREES THAT LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF THE VEHICLE(S), WHICH ARE THE SUBJECT OF THIS LEASE AGREEMENT AND THAT EACH VEHICLE (INCLUDING ANY SPECIFIED MODIFICATION) IS OF A DESIGN SPECIFIED BY LESSEE AND SUITABLE FOR ITS BUSINESS PURPOSES.

LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO (a) ANY VEHICLE INCLUDING, BUT NOT LIMITED TO THE MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW OR (b) THE ACCOUNTING TREATMENT OF THIS AGREEMENT OR THE TIMING OF THE ACCRUALS OF THE RENTALS HEREUNDER FOR FINANCIAL STATEMENT OR TAX PURPOSES. LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR IS AN INDEPENDENT CONTRACTOR AND DOES NOT ACT IN THE CAPACITY OF A FIDICIUARY OF LESSEE, OR THE LESSEE'S COMPANY AND THAT IT WILL OBTAIN TAX AND ACCOUNTING ADVICE FROM ITS OWN PROFESSIONALS. LESSEE ACKOWLEDGES THAT IS HAS SELECTED BOTH (A) THE VEHICLES LISTED OR REFERRED TO IN THE VEHICLE SCHEDULES (B) THE SUPPLIER FROM WHOM LESSOR IS TO PURCHASE SAID VEHICLE. IN THIS RESPECT, LESSEE ACKNOWLEDGES THAT LESSOR IS NOT THE MANUFACTURER OF SAID VEHICLES NOR THE AGENT OF SAID MANUFACTURER.     LESSEE FURTHER ACKNOWLEDGES THAT LESSOR HAS NOT MADE, AND DOES NOT MAKE ANY, WARRANTY OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, OF ANY KIND WHATSOEVER WITH RESPECT TO THE VEHICLES, INCLUDING, BUT NOT LIMITED TO; (A) AS TO THE FITNESS, DESIGN OR CONDITION OF THE VEHICLE; (B) AS TO THE MERCHANTABILITY OF THE VEHICLE OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; (C) AS TO THE QUALITY OF THE CAPACITY OF THE VEHICLE, THE MATERIALS IN THE VEHICLE, OR WORKMANSHIP IN THE VEHICLE; (D) AS TO ANY LATENT DEFECTS IN THE VEHICLE; (E) AS TO ANY PATENT, COPYRIGHTS, OR TRADE SECRETS OR INFRINGEMENTS; AND (F) AS TO THE COMPLIANCE OF THE EQUIPMENT WITH ANY REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION, OR CONTRACT PERTAINING THERETO. LESSEE FURTHER ACKNOWLEDGES THAT IT IS LEASING SAID VEHICLES FROM LESSOR IN AN "AS IS" CONDITION AND THAT NO DEFECT OR UNFITNESS OF THE EQUIPMENT SHALL RELIEVE LESSEE OF LESSEE'S OBLIGATIONS TO PAY THE LEASE PAYMENTS OR ANY OTHER OBLIGATIONS LESSEE MAY HAVE TO LESSOR UNDER THE TERMS OF THIS LEASE. IT IS AGREED THAT LESSOR SHALL HAVE NO OBLIGATION TO INSTALL, ERECT, TEST, ADJUST, REPAIR OR SERVICE THE AFORESAID VEHICLES.   Lessor shall not be liable to Lessee for any loss, damage, or expense of any kind or nature caused, directly or indirectly, by any Vehicle leased hereunder, or the use or maintenance thereof, or the failure or operation thereof, caused, directly  or indirectly, by any equipment leased hereunder or the use of maintenance thereof or the failure of operation thereof, or the repair, service of adjustment thereof, or by any delay or failure to provide any such maintenance, repairs, service or adjustment by an interruption of service or losses of use thereof or for any loss of business however caused. Lessor shall not be liable for any consequential damages as that term is used in UCC Section 2-719(c). No defect of unfitness of the Vehicle shall relieve Lessee of the obligation to pay any Lease Payment or any other obligation under this Lease. Lessor shall not be liable to Lessee for any factory, or manufacturer, recalls and in the event of such occurrence, Lessee must comply immediately upon notice of such recall announcement.

5. RENEWAL;  Unless Lessee, sixty (60) days prior to the expiration of any Vehicle Schedule, notifies lessor in writing of its intentions to terminate the Vehicle Schedule at its expiration date, then this Lease and the Vehicle Schedule shall automatically be extended upon all of the terms and conditions as stated herein and in the Vehicle Schedule for a period of one year from its expiration date, without the necessity of the execution of any further instrument or document and shall continue from year to year thereafter under the same terms and conditions until terminated. However, it is duly noted that 30 days after such extension, the Lessor shall have the unilateral right to terminate the Lease Agreement upon proper notice as provided herein.

6. WARRANT OF ATTORNEY. THE FOLLOWING SETS FORTH A WARRANT OF AUTHORITY FOR ANY ATTORNEY TO CONFESS JUDGMENT AGAINST LESEEE. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST LESSEE, LESSEE, FOLLOWING CONSULTATION WITH, OR DECISION NOT TO CONSULT WITH COUNSEL, AND WITH KNOWLEDGE OF THE LEGAL EFFECT HEREOF, HEREBY WAIVES ANY AND ALL RIGHTS LESSEE HAS, OR MAY HAVE, TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING BEFORE ENTRY OF JUDGMENT UNDER THE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA. LESSEE ACKNOWLEDGES THAT PURSUANT TO THIS WARRANT OF ATTORNEY, LESSOR IS AUTHORIZED TO ENTER A JUDGMENT AGAINST LESSEE WHICH WILL GIVE LESSOR A LIEN AGAINST LESSEE'S REAL PROPERTY AND WHICH MAY PERMIT LESSOR TO, BY UTILIZING THE POWER OF STATE GOVERNMENT, SEIZE LESSEE'S PERSONAL PROPERTY INCLUDING LESSEE'S BANK ACCOUNTS. LESSEE SPECIFICALLY ACKOWLEDGES THAT LESSOR HAS RELIED ON THIS WARRANT OF ATTORNEY IN GRANTING THIS LEASE. UPON THE OCCURRENCE OF A DEFAULT (AS DEFINED IN PARAGRAPH 20 HEREOF) LESSEE AUTHORIZED AN ATTORNEY, OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR AND ENTER JUDGMENT AGAINST LESSEE AT ANY TIME AND FROM TIME TO TIME, AND AS OF ANY TERM FOR SUCH AMOUNT AS MAY BE OWING BY LESSEE, INCLUDING, BUT NOT LIMITED TO LEASE PAYMENTS AND THE RESIDUAL PAYMENTS, IF ANY, UNDER THIS LEASE WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION, AND WITH ATTORNEY'S FEES OF TWENTY PERCENT (20%), BUT IN NO EVENT LESS THAN FIVE HUNDRED DOLLARS ($500), AND LESSEE RELEASES ALL

ERRORS IN CONNECTION WITH SUCH ACTION AND WAIVES ALL RIGHTS OF APPEAL WITH RESPECT TO THIS LEASE AS A WARRANT OF ATTORNEY. THIS CONFESSION OF JUDGMENT AND WARRANT OF ATTORNEY SHALL NOT BE EXHAUSTED BY THE USE OR ATTEMPTED USE THEREOF BUT SHALL CONTINUE IN FULL FORCE AND EFFECT AND MAY BE EXERCISED AS OFTEN AS NECESSARY UNTIL ALL AMOUNTS OWING BY LESSEE TO LESSOR PURSUANT TO THE PROVISIONS OF THIS LEASE, OR ON ACCOUNT OF THE VEHICLES, SHALL HAVE BEEN PAID IN FULL. ANYTHING CONTAINED HEREIN TO THE CONTRARY NOTWITHSTANDING, LESSOR AGREES NOT TO LEVY, EXECUTE OR GARNISH ANY RESIDENTIAL REAL PROPERTY AS PROHIBITED BY THE ACT OF JANUARY 30, 1974 (NO.6) AND REGULATIONS THEREUNDER OF THE LESSEE OR GUARANTOR. INITIALS OF LESSEE:

7.  **TERMINATION BY LESSOR;** Lessor shall have the exclusive option to terminate this Lease and Lessor's obligations hereunder, if it is within ninety (90) days after the Scheduled Date, the Vehicles have not been delivered to Lessee, or Lessee has not accepted the Vehicles as provided in Paragraph 11 hereof. The aforesaid option of Lessor to terminate this Lease may be exercised by giving Lessee written notice of termination pursuant to this Paragraph at any time within sixty (60) business days after expiration of the aforesaid ninety (90) day period.

8.  **NO CANCELLATION BY LESSSEE. IT IS EXPRESSLY UNDERSTOOD BY ALL PARTIES THAT THIS LEASE MAY NOT BE UNILATERALLY CANCELED OR TERMINATED UNDER ANY CIRCUMSTANCE BY THE LESSEE.**

9.  **OPERATION OR USE;** The Lessee shall operate the Vehicles, or cause the Vehicles to be operated, in the United States, or any U.S. Territory, only and shall operate and maintain the Vehicles in strict conformity with all federal, state, county and municipal statutes, ordinances and regulations and shall not permit the Vehicles to be used for the transportation of hazardous substances or the unlawful transportation of any persons or property including, without limitation, alcoholic beverages or narcotics. When applicable, should the Lessee be a "Motor Carrier," the Lessee shall ensure compliance with the Vehicle Identification and placarding requirements using its own US DOT identification number on the Vehicle. The Lessee shall comply and cause all persons operating the Vehicles to comply with all statutes, ordinances and regulations which may be applicable to the registration, leasing, insurance, use and operation of the Vehicles, including operator's licensing requirements, and with all conditions of the policies of insurance on the Vehicle, and shall prepared and furnish to the Lessor all documents, returns or forms legally required thereunder. The Lessee agrees that whenever any statute, ordinance, or regulations requires installation of any accessories or equipment, the Lessee will comply with all such requirements and will accept such equipment for all new Vehicles at the time such Vehicles are acquired by the Lessor for the Lessee. Lessee agrees to repair the Vehicles and to maintain to the standards and requirements of the manufacturer's warranty. All additions to a Vehicle become the property of the Lessor and shall, unless otherwise directed by the Lessor, be surrendered with the Vehicle. Vehicles subject to this Lease, shall be used exclusively for business, or other commercial purposes, and shall not be used at any time during the Initial Term of Lease, or any renewal term, for personal, family, or household purposes. In addition, the Vehicles shall be used according to accepted standards of use for the Vehicles in the industry or trade in which it is customarily used.

10. **FINANCIAL INFORMATION/SELECTION AND ORDERING OF VEHICLES;** Lessee has selected the Vehicles and herein has requested Lessor to purchase the vehicles in order to lease the same to Lessee in accordance with this Lease. Lessee acknowledges that the vehicles which it has selected are suitable for the purposes of their intended use with respect to the Lessee's business. Lessee further acknowledges this selection was not made pursuant to, or in reliance upon, the judgment, recommendations or representations of Lessor. Lessee shall cooperate in arranging for delivery of the designated Vehicles to the address of Lessee set forth in the Vehicle Schedule pertaining to the location of the Vehicles, or if no such address indicated, to such other address as Lessor shall determine. It is duly noted by both parties that any and all provisions contained in Paragraph 10 herein, are subject to credit approval of the Lessee, which in addition may be conditioned upon the execution of a personal financial guarantee. **Nothing herein shall be construed to require Lessor to accept any order for a vehicle from Lessee and such shall be expressly contingent upon the financial and credit approval of the Lessee. It is further emphasized that not only are such vehicle orders contingent upon the unilateral credit approval by Lessee, such may be predicated upon the execution of any and all necessary personal financial guarantees.**

11. **DELIVERY AND INSPECTION OF VEHICLES;** Lessee shall inspect the Vehicles within twenty-four (24) hours after they are delivered to Lessee. Unless within such twenty-four (24) hour period Lessor receives written notice from Lessee, specifying any proper objection to the Vehicles, it shall be conclusively presumed, as between Lessor and Lessee that; (A) Lessee has fully inspected the Vehicles; (B) the Vehicles are in full compliance with the terms and conditions of this Lease (C) the Vehicles are in good condition and repair; (D) Derogatory Car Fax references shall not be considered as a valid authority for the sole basis of rejection and (E) Lessee has accepted the Vehicles. If Lessor shall request, Lessee shall promptly furnish Lessor with a written statement setting forth the matters set forth in (A), (B), (C), (D) and (E) of this Paragraph and also approving the payment of the invoice pertaining to the Vehicles or a portion thereof. **Failure of the Lessee to offer timely objection to acceptance of the vehicle(s), as defined in this paragraph, shall be legally construed as acceptance, resulting in Lessee's waiver to assert such rejection at a point thereafter. If Lessee requests that Lessor, prior to delivery to Lessee, deliver one or more Vehicles to an up lifter, body company, installer or other third party and/or obtain certain equipment or parts from a specific vendor (each "Vendor"), then Lessee assumes all risks of doing business with the Vendor, including without limitation, the Vendor's creditworthiness.**

12. **OWNERSHIP;** The Vehicles are, and shall at all times remain, the property of the Lessor and Lessee shall have no right, title or interest therein or thereto except as expressly set forth in this Lease Agreement. The Vehicles are and shall at all times be and remain the personal property of the Lessor.

13. **STORAGE AND RIGHT TO INSPECTION OF VEHICLES;** The Vehicles subject to this Lease Agreement shall be delivered and thereafter kept at the location specified on the Vehicle Schedule, or if not as specified, at Lessee's billing address set forth on the first page of this Lease and shall not be removed therefrom without Lessor's prior written consent. Lessor shall have the right to inspect the Vehicles at any time without prior notice. **If Lessee refuses Lessor the right to inspect its property, in this case Vehicles, Lessee will have committed a material breach of contract and this Lease Agreement will be deemed void;**

14. **REPAIRS, USE, MAINTENANCE AND ALTERATIONS OF LEASED VEHICLES;** Lessee, at its own expense, shall keep the Vehicles in good working condition and repair and, at its own expense, furnish all labor, parts and devices required therefore. Lessee shall use the Vehicles in a careful and lawful manner. Lessee shall not make any alterations, additions, or improvements to the Vehicles without Lessor's prior written content. It should be noted that the implementation of GPS tracking devices is deemed acceptable and an approved addition to the Vehicles and viewed as a prudent measure of protecting the Lessor's property. All replacement of the Vehicles, parts, repairs and accessories to the Vehicles shall immediately become a component part therefor and title thereto shall be immediately vested in the Lessor and shall be included under the terms and conditions hereof. Any such parts, replacements, repairs, improvements, additions and accessories made to the vehicles shall not be removed without Lessor's prior written consent. **As provided in this paragraph, any repairs performed upon the Vehicles shall mandate the utilization of Original Manufactured Equipment (OEM) parts only. Lessee hereby warrants that in the event vehicle repairs are necessary, no Aftermarket, Like Kind Quality (LKQ), or OEM LKQ (donor parts) shall be used or installed on any Vehicles, which are the subject of this Lease Agreement.**

15. **INSURANCE;** Lessee shall maintain the following coverages during the Lease Term of each Vehicle with an insurance company acceptable to Lessor and deliver to Lessor a certificate thereof: a) Automobile liability insurance with minimum limits of coverage as lessor may require. No self-insured retention or deductible is permissible. b) Comprehensive and collision insurance with a Loss Payee endorsement as specified by Lessor and with coverage for the actual cash value of each Vehicle and subject to a mutually agreeable deductible. Lessee shall bear all risk of loss, damage or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor. c) Conditions. All insurance policies shall provide for thirty (30) days prior written notice to Lessor of any cancellation or reduction in coverage. Lessee authorizes Lessor to endorse Lessee's name to any two-party insurance checks related to the leased Vehicles.

16. **INDEMNITY. LESSEEE WILL INDEMNIFY AND DEFEND LESSOR (INCLUDING ANY OF ITS AFFILIATES AND AGENTS AGAINST ANY LOSS, LIABILITY, OR CLAIM DIRECTLY OR INDIRECTLY RELATING TO THE LEASE, MAINTENANCE, USE, CONDITION (INCLUDING BUT NOT LIMITED TO PATENT OR LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR CONDITION OF THE VEHICLE AT SURRENDER), OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO LESSEE AND THE TIME OF SURRENDER. IF LESSOR SELLS ANY VEHICLE TO LESSEE, ANY OF ITS EMPLOYEES, OR A PURCHASER FROM WHOM LESSEE OBTAINED AN OFFER, LESSEE'S COVENANT OF INDEMNITY, WITH RESPECT TO SUCH VEHICLE, SHALL CONTINUE THIS INDEMITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY, AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM WILLFUL MISCONDUCT OF LESSOR OR ITS AGENTS OR EMPLOYEES. THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT**

17. **TITLING; REGISTRATION;** Unless otherwise required by law, all Vehicles subject to this Lease Agreement shall be registered in the name of the Lessor during the entire Lease Term, and shall be titled exclusively in the following states; Pennsylvania, New Jersey and/or Florida. Further, any certificates of title required shall be likewise in the name of the Lessor. Lessee shall provide Lessor prior written notice of any change of address or location of Vehicle's titling, registration, delivery, purchase, sale, rental and modification, and arising from the operation or use of the Vehicle during its Lease Term. If Lessor pays any of the foregoing amounts, Lessee shall promptly reimburse Lessor and pay the then current administrative charge noted in the Rate Schedule attached hereto. **In the event of any governmental, or agency seizure, it is duly noted that Lessor shall be deemed an "innocent owner". In the event of any ticketing, or parking citations, Lessee shall take full financial responsibility and make prompt payment within seven (7) business days.**

18. **LIENS, TAXES;** Lessee shall keep the Vehicles free and clear of all levies, liens, security interests and other encumbrances of any nature. In addition, Lessee shall (A) make and file all declaration and returns in connection with all charges and taxes (local, state and federal), which may now or hereafter be imposed upon or measured by the ownership, leasing, rental, sale, purchase, possession or use of the Vehicles excluding however all taxes on or measured by Lessor's net income; and (B) pay all such charges and taxes or to pay the same, then Lessee shall reimburse Lessor, immediately upon demand of Lessor, for any and all such charges and taxes applicable to the Vehicles.

19. **LESSORS PERFORMANCE OF LESSEE'S OR GUARANTOR'S OBLIGATIONS;** If Lessee or Guarantor fail to duly and properly perform any of its obligations under this Lease, Lessor may at its option, but shall have no duty to, perform any act or make any payment which Lessor deems necessary for the maintenance and preservation of the Vehicles or protection thereof of the maintenance and protection of Lessor's title, nature, and payment of repairs, taxes and insurance and all sums so paid or incurred by Lessor, together with interest at the highest rate lawfully permitted and pay all reasonable attorney's fees incurred by Lessor in connection therewith, shall be additional lease payments ("Additional Lease Payments") under this Lease and payable by Lessee to Lessor immediately on demand. The performance of

any act or of payment by Lessor as aforesaid shall not be deemed a waiver or release of any obligation or Default (as hereinafter defined in Paragraph 20) on part of the Lessee.

20. **DEFAULT AND REMEDIES**; (A) The occurrence of any one of the following events will constitute a Default of the Lease Agreement by Lessee, hereunder called ("Event of Default"): (i) failure to pay, when due and payable, any Lease Payment (original or renewal) or any other of Lessee's financial obligations under the term hereof; (ii) failure by Lessee to perform, keep and observe any term, provision, warranty, condition, covenant or representation under this Lease, or any Vehicle Schedule, that is required to be performed, kept or observed by Lessee [other than those contained in (i) above]; (iii) if at any time or times hereafter any material warranty, representation, statement, report or certificate now or hereafter made or furnished to Lessor by or on behalf of Lessee is not true and correct: (iv) if any of the Vehicles, or all of a material, of Lessee's property is attached, seized, subjected to writ or distress warrant, or is levied upon, or comes within the possession of any receiver, trustee, custodian, law enforcement agency, or assignee for the benefit of creditors and the same is not terminated or dismissed within twenty (20) days thereafter; (v) the death of the Lessee, or if the business of the Lessee undergoes a change of more than one-half of the existing ownership, or if the Lessee discontinues its normal business operations for a period of ten (10) days or more: (vi) the filing or commencement of any application, proceeding or case by Lessee for Lessee's dissolution or liquidation, the attempt by Lessee to make an assignment for the benefit of Lessee's creditors, or the filing by Lessee of any case under the Bankruptcy Reform Act of 1978, or any similar law, whether state or federal for liquidation or rehabilitation of Lessee or of any case for the appointment of a receiver, trustee, or custodian for all or a material part of the property of the Lessee; (vii) the filing against Lessee of any application, proceeding or case for Lessee's dissolution or liquidation, or of any case against Lessee under the Bankruptcy Reform Act of 1978 or any similar law, whether state or federal, or of application, proceeding or case is not dismissed or stayed within (30) days after the filing thereof: (viii) the filing of a notice of tax lien or the existence of any other lien, claim or encumbrance with respect to any of the Vehicles or all or a material part of Lessee's property: (ix) If Lessee is enjoined, restrained or in any way prevented by court order or otherwise from conducting all or a material part of its business affairs in the ordinary course and such injunction or restraint is not dismissed or stayed within thirty (30) days after the entry or filing thereof: (x) the occurrence of a default, or Event of Default under any agreement, by and between Lessee and Lessor (or any affiliate thereof) any instrument or document therefore, now or at any time or times hereafter executed and delivered by Lessee to Lessor or any affiliate thereof: (xi) If Lessee is in default in the payment of any indebtedness to any third party and such default is declared and is not cured within the time, if any, specified therefore in any agreement governing the same: (xii) If Lessee fails to notify the Lessor in writing and does not secure prior written approval from Lessor of any of the following changes regarding Lessee's: legal name, entity type or structure, chief place of business, or executive offices, or opening of any additional location or locations to conduct business and/or to store Lessor's vehicles; (xiii) through Lessee's actions, Lessor's interest in its Vehicles is jeopardized or in any way becomes junior to any creditor, or (xiv) if for any reason the Lessor has a reasonable basis to believe that the Lessee will not comply with all of the terms and conditions of the Lease. (B) Upon an Event of Default, Lessor may, at its election and without notice or demand, exercise any one or more of the following remedies in order to protect the interest and reasonably expected profits and bargains of Lessor; (i) Upon notice to Lessee terminate this Lease and Lease Schedules executed pursuant thereto; (ii) the occurrence of any Event of Default or any time thereafter, or if Lessor decides, in its sole discretion, not to take possession of the Vehicles, Lessor continues to be the owner of the Vehicles and may, but is not obligated to, dispose of the Vehicles by sale or otherwise, all of which determinations may be made by Lessor in its absolute discretion and for its own account; (iii) declare immediately due and payable all sums due and to become due hereunder for the full term of the Lease (including any renewal or purchase options, which Lessee has contracted to pay); (iv) with our without terminating this Lease, recover from Lessee damages, not as a penalty, but herein liquidated for all purposes and in the amount equal to the sum of (a) any accrued and unpaid Lease Payments as of the date of entry of judgment in favor of Lessor plus late charges and all other sums that may accrue hereunder, (b) the present value of all future Lease Payment reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Philadelphia as of the date of entry of judgment in favor of Lessor plus one percent. (c) all commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale release or other disposition of the Vehicles including reasonable attorneys' fees of twenty percent (20%), but in no event less than five hundred dollars ($500) and costs incurred in connection therewith, or otherwise resulting from Lessee's default (inclusive of attorney's fees, fees of collection agencies, and other costs incurred in the collection of the balance due). (d) estimated residual value of the Vehicles as of the expiration of this Lease or any renewal thereof (if such Lease has been renewed) and (e) any indemnity if then determinable. For purposes hereof in the event that Lessee shall pay all sums due to Lessor under Sections (a) through (e) of this Paragraph, prior to the date of the entry of judgment, the date of payment shall be deemed to be the date of entry of judgment; (v) in its sole discretion, re-lease or sell any or all of the Vehicles at a public or private sale on such terms and with or without notice as Lessor shall deem reasonable, at Lessor's place of business, and recover form Lessee damages, not as a penalty, but herein liquidated for all purposes and in an amount equal to the sum of: (a) any accrued and unpaid Lease Payments as of the later of the date of default or the date that Lessor has obtained possession of the Vehicles or such other date as Lessee has made an effective tender of possession of the Vehicles back to the Lessor ("Default Date"); plus Lease Payments (at the rate provide for in this Lease and any Lease schedule) for the additional period (but in no event longer than four (4) months) that it takes Lessor to resell or remarket all of the Vehicles, plus late charges and other sums that may accrue hereunder; (b) the present value of all future Lease Payments reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Philadelphia as of the Default Date plus one percent (1%) (c) all commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-sale or other disposition of the Vehicles including attorneys' fees of twenty (20%) but in no event less than five hundred dollars ($500) and costs incurred in connection with or otherwise resulting from the Lessee's default; (d) estimated residual value of the Vehicles as of the expiration of this Lease or any renewal thereof (if such Lease has been renewed; and (e ) any indemnity, if then determinable, LESS the amount received by Lessor upon such public or private sale or re-release of such items of Vehicles if any; (vi) if (a) Lessor elects not to sell- re-lease or otherwise dispose of all or part of the Vehicles or (b) does so by a re-lease which is not made in a manner substantially similar to the Lease or any applicable Lease Schedule or (c) the measure of damages under

subparagraphs (B)(iii) and (iv) above are not allowable under any applicable law, Lessor may recover the market value, if any, as of the Default Date of the Lease Payment reasonably estimated by Lessor to be obtainable for the Vehicles during the remaining Lease term of any renewal thereof then in effect, plus any accrued and unpaid Lease Payments as of the Default Date; (vii) exercise any other right or remedy which may be available to it under the Uniform Commercial Code or any other applicable law: (viii)  a termination hereunder shall occur only upon notice by Lessor and only as to such items of Vehicles as Lessor specifically elects to terminate and this Lease shall continue in full force and effect as to the remaining vehicles, if any: (ix) if this Lease is deemed at any time to be one intended as security, Lessee agrees that the Vehicles shall secure, in addition to the indebtedness set forth herein, indebtedness at any time owing by Lessee to Lessor; (x) Lessor shall have the right to apply Lessee's security deposit to reduce the amount of Lessee's obligations and proceed against lessee for any remaining sums owed.  No remedy referred to in this Paragraph is intended to be exclusive, but shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor in law or in equity (c ) If Lessee fails to perform any of the provisions under the Lease or any other agreement with Lessor, or Lessee makes a bulk transfer of inventory, Lessor shall have the right to exercise any remedy available at law or in equity, including, but not limited to seeking damages or specific performance and/or obtaining an injunction and/or exercising the Warrant of Attorney and Confession of Judgment more fully set forth in Paragraph 6 and in any guaranty. (D) No right or remedy herein conferred upon, or reserved, to Lessor is exclusive of any right or remedy herein or by law or equity provided or permitted, but each shall be cumulative  of every other right or remedy given hereunder or now or hereafter existing at law or in equity, or by statute or otherwise and may be enforced concurrently therewith or from time to time, but Lessor shall not be entitled to recover a greater amount in damages than Lessor could have gained by receipt of Lessee's full, timely and complete performance of its obligations pursuant to the terms of this Lease plus accrued delinquent payments under Paragraph 26.

21. **LESSEE'S WAIVERS;**  To the extent permitted by applicable law,   Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, but not limited to Lessee's rights to: (A) cancel this Lease: (B) repudiate this Lease: (C) Reject Vehicles: (D) revoke acceptance of the Vehicles: (E) recover damages from Lessor for any breaches of warranty or for any other reason: (F) a security interest in the Vehicles in Lessee's possession or control for any reason: (G) deduct all or part of any claimed damages resulting from Lessor's default, if any, under this Lease: (H) accept partial delivery of the Vehicles: (I) "cover" by making any purchase or lease of or contract to purchase or lease vehicles in substitution for those due from Lessor: (J) recover any general, special, incidental or consequential damages, for any reason whatsoever: (k) specific performance, replevin, claim and deliver of the like for any Vehicles identified in this Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now, or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Vehicles in mitigation of Lessor's damages as set forth in Paragraph 18 or which may otherwise limit or modify any of the Lessor's rights or remedies under Paragraph 18.  Any action by Lessee against Lessor for any default by Lessor under this Lease, including breach of warranty or indemnity, shall be commenced within one (1) year after any such cause of action occurs.

22. **LESSORS EXPENSES;** Lessee shall pay to Lessor all expenses, including but not limited to reasonable attorneys' fees incurred by Lessor in enforcing any of the provisions hereof or in exercising any rights or remedies of Lessor hereunder or by law or equity permitted.

23. **INDEMNITY;** Lessee hereby warrants and covenants that Lessee shall indemnify and hold Lessor harmless of and from any and all liability, loss, damage, cost and expense, including but not limited to reasonable attorney's fees, arising out of or otherwise pertaining in any way to the Vehicles. This Lease or any injury to person or property of any nature resulting from, pertaining to, or based upon the actual or alleged manufacture, selection, purchase, sale, ownership, lease, delivery, possession, transportation, use or operation of the Vehicles or its location or condition, or any other interest of Lessor in the Vehicles or this Lease, or any activity, forbearance or omission by lessor with respect to the Vehicles of this Lease. In addition, Lessee, immediately upon demand by Lessor, shall satisfy, pay and discharge any and all judgments and fines which may be assessed or recovered against Lessor in any action pertaining to any of the aforesaid circumstances.

24. **LOSS OR DAMAGES;** Lessee shall bear the entire risk of loss, theft, destruction, or damage of the Vehicles or any portion thereof from any cause whatsoever.  The liability of Lessee to pay Lease Payments thereof may be discharged by paying the lessor a "Casualty Loss Payment", which shall be a payment in an amount equal to the total of the following: (A) any accrued and unpaid Lease Payments as of the date of receipt of such payment by Lessor plus late charges and all other sums that may accrued hereunder: (B) the present value of all future Lease Payments reserved in the Lease and contracted not to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Philadelphia as of the date of receipt of such payment by Lessor plus one percent (1%) (c) All commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-lease , or other disposition of the Vehicles including attorney's fees of twenty percent (20%) but in no event less than five hundred dollars ($500) and costs incurred in connection therewith or otherwise resulting from Lessee's default (inclusive of attorney's fees, fees of collection  agencies, and other costs incurred in the collection of the balance due): (D) estimated residual value of the Vehicles as of the expiration  of this Lease or any renewal thereof (if such Lease has been renewed); and (E) any indemnity, if then determinable.   Except as provided in the preceding sentence, the total or partial destruction of any Vehicles, or total or partial loss of use or possession thereof by Lessee, shall not release or relieve Lessee from the duty to pay the Lease Payments herein provided.  Lessor shall not be obligated to undertake by litigation or otherwise, the collection of any claim against any person for loss or damage of the Vehicles.

25. **SURRENDER;** At the expiration, or other termination of this Lease, or upon demand by Lessor following a Default, Lessee, at its own expense, shall immediately return the Vehicles in as good condition received less NORMAL WEAR AND TEAR, by delivering to such place on or such carrier as Lessor may require.  Such terms of delivery shall be expressly stated in writing between from Lessor to Lessee.

26. **SERVICE CHARGES AND INTEREST**; If Lessee fails to pay when due any Lease Payment, Renewal Lease Payment, Additional Lease Payment, or other amount required herein to be paid to Lessor, and in order to defray the additional costs incurred by Lessor, Lessee or Guarantor shall pay to Lessor a service charge of five percent (5%) of such amount or part thereof which shall be delinquent, or ten dollars ($10.00) whichever is greater, plus interest on such delinquent amount over the minimum service charge at eighteen percent (18%) per annum or the maximum rate allowable by law.

27. **NOTICES**; Service of all notices under this Lease shall be sufficient if given personally, or mailed, to the party involved at its respective address set forth above, or at such other address as said party may provide in writing to the other from time to time. Any such notice mailed to said address shall be effective when deposited in the United States mail, duly addressed and with postage prepaid and shall be considered actual and legally effective Notice.

28. **LEGAL NOTICES**; Lessee shall give full cooperation in the prosecution and defense of any action brought by or against Lessor or its insurance carrier. If any action is commenced for damages resulting from the use in any way of a Vehicle, Lessee shall notify Lessor of the action and forward within ten (10) days after receipt of a copy any summons or other process received in connection with the action. The Lessee shall notify the Lessor of every lien, encumbrance, or levy placed against a Vehicle within twenty four (24) hours after it is placed.

29. **SECURITY DEPOSITS**; when any Vehicle Schedules provide for a security deposit, Lessor may, but shall not be obligated to, apply the security deposit to cure any Default, in which event Lessee shall promptly restore in full the security deposit. Upon termination of this Lease and all renewals hereof and all Vehicles Schedule(s). If Lessee has fulfilled all the terms and conditions hereof and no Default shall have occurred, Lessor shall return to Lessee any remaining balance of the security deposit. No security deposit shall earn interest.

30. **ASSIGNMENT**; Without Lessor's prior written consent, Lessee shall not (A) assign, transfer, pledge, or otherwise dispose of this Lease, the Vehicles, or any interest therein, or (B) sublet or lend the Vehicles or permit them to be used by anyone other than the Lessee, or Lessee's employees. Lessor may assign, grant a security interest in, or otherwise transfer this Lease of Vehicles, in whole or in part, without notice to Lessee. However, if Lessee is given notice of such assignment, grant or transfer, Lessee shall acknowledge receipt thereof in writing. Each such assignee, grantee, secured party or other transferee shall have all of the rights, but none of the obligations, if any exist, of Lessor under the Lease. Lessee shall not assert against any assignee, grantee, secured party of other transferee of Lessor any defense, counterclaim or offset that Lessee may have against Lessor. Notwithstanding any such assignment, grant of transfer, Lessor warrant that so long as no Default shall have occurred, Lessee shall quietly enjoy the use of the Vehicles subject to the terms and conditions of this Lease. Subject to the foregoing, this Lease inures benefit of all and is binding upon the heirs, legatees, personal representatives, successor and assigns of the parties hereto.

31. **LEASE INTEGRATION**; This Agreement, together with each Rate Schedule, Lease Schedule, addendum and Vehicle Order, constitutes a single unitary, non-severable Lease Agreement between Lessor and Lessee for all Vehicles leased by the Lessee from Lessor and governed by this Agreement and each Rate Schedule, Lease Schedule and Vehicle Order.

32. **SEVERABILITY**; If any provision of this Lease or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this Lease and the application of such provision to other parties or circumstances shall not be affected thereby and to this end the provision of this Lease are declared severable.

33. **NO ORAL AGREEMENTS**; All prior conversations, agreements and representations relating to this Lease, or to the Vehicles are integrated herein. None of the terms, or conditions, of this Lease shall be changed or modified except in writing duly executed by Lessor and Lessee.

34. **CAPTIONS**; The captions of headings of each Paragraph of this Lease do not constitute part of the Lease, but are for information only.

35. **GENDER NUMBER**; When the sense so requires, words of any gender used in the Lease shall be held to include any other gender, and words in the singular number shall be held to include the plural and vice versa.

36. **ADDITIONAL DOCUMENTS AND AUTHORIZATION TO FILE FINANCING STATEMENT**; Lessee authorizes Lessor to file such financing statements and amendment statements with respect to this Lease and the Vehicles covered under the Lease as Lessor shall deem necessary to establish or give notice of the interest of Lessor in said Vehicles. Further, upon demand, Lessee shall cause to be executed on its behalf and delivered to Lessor from time to time any and all additional documents needed or desired to establish or to give notice of the interest of Lessor in the Vehicles covered under this Lease. The filing costs for any financing statement, amendment statement or any other document utilized to establish or give notice of the interest of Lessor in the Vehicles covered under this Lease shall be the obligation of Lessee and Lessee shall pay the same to Lessor as Additional Lease Payments upon demand. The parties intend this transaction to be a True Lease, but if any court or tribunal having power to bind the parties, should conclude that all or part of this transaction is not a True Lease, but is in the nature of a sale, consignment or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Vehicles from the date of this Lease secure the payment of all lessee's indebtedness to Lessor. In the event that Lessee shall fail or refuse to promptly execute and deliver to Lessor such documents, Lessor, in addition to all other rights and remedies provided in the Lease or otherwise by law or equity permitted, is irrevocably as its attorney-in-fact, authorized by Lessee, but under no duty to execute the Lessee's

name on any such documents. Such failure or refusal by Lessee to execute or deliver documents, regardless of whether Lessor shall exercise its aforesaid right to execute Lessee's name, shall constitute a Default hereunder.

37. **LAW AND JURISDICITON. THIS LEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA. LESSEE AGREES THAT ANY ACTIONS OR PROCEEDING TO WHICH LESSOR IS A PARTY ARISING DIRECTLY OR INDIRECLTY FROM THIS LEASE, SHALL BE LITIGATED, AT LESSOR'S OPTION, IN ANY STATE OF FEDERAL COURT HAVING SITUS WITHIN THE COMMONWEALTH OF PENNSYLVANIA, AND THAT SAID COURT SHALL HAVE JURISDICTION THEREOF.**

38. **WAIVER OF JURY TRIAL. BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY HEREUNDER.**

39. **MODIFICATIONS;** This Agreement, its exhibits, Lease Schedules, Rate Schedules, Vehicle Orders, addenda and amendments contain the entire understanding of the parties and merge all oral understandings. Lessee may issue purchase orders for administrative convenience, but such purchase orders are subject to the terms and conditions of this Agreement and shall not amend or supplement it. Any modifications, changes, or amendments may be made only in a writing duly signed by Lessee and Lessor. Failure of either party to enforce any right shall not be deemed a waiver of such right.

40. **ODOMETER DISCLOSURE STATEMENT;** Federal law (and State law, if applicable) requires that Lessee shall disclose, the mileage of each vehicle to Lessor in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment.

41. **MISCELALLNEOUS;** All provision of this Lease are material and any Default hereunder by Lessee or Guarantor is material and substantial. Time is of the essence. No provision of this lease may be waived except by the written consent of Lessor. Lessee and/or Guarantor, shall provide Lessor with such corporate resolutions, opinion of counsel, financial statements and other documents as Lessor shall reasonably request from time to time. If more than one Lessee is named in this Lease, the liability of each shall be joint and several. All financial data submitted to Lessor is hereby acknowledged and affirmed as true and correct copies of the signed originals.

ACCEPTED:

**FLEETWAY LEASING CO**

BY: _____

TITLE: _____

DATE: 6/21/16

LESSEE:

**AUTO BOUTIQUE OF SOUTH FLORIDA INC**

BY: _____

TITLE: Pres

DATE: 6/21/16

ACCEPTANCE OF MASTER LEASE AGREEMENT
AND SCHEDULE "A"
June 17, 2016
BETWEEN
FLEETWAY LEASING CO
AND
AUTO BOUTIQUE OF SOUTH FLORIDA INC

| LEASE # | SERIAL NUMBER | CAP COST INVOICE | TERM | MONTHLY PAYMENTS | LEASE END BUYOUT | YEAR | MAKE | MODEL | COLOR | TAG | BANK FEE | JUNE PMT | TAG & TITLE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11669-1 | 3VW2K7AJ5FM213827 | $12,670.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4706 | NA | $509.00 | NA |
| 11670-1 | 3VW2K7AJ7FM210511 | $12,670.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4707 | NA | $509.00 | NA |
| 11671-1 | 3VW2K7AJ6FM353624 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4708 | NA | $509.00 | NA |
| 11672-1 | 3VW2K7AJ4FM354092 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4709 | NA | $509.00 | NA |
| 11673-1 | 3VW2K7AJ5FM355826 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4710 | NA | $509.00 | NA |
| 11674-1 | 3VW2K7AJ9FM211859 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4711 | NA | $509.00 | NA |
| 11675-1 | 3VW2K7AJ2FM210594 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4712 | NA | $509.00 | NA |
| 11676-1 | 3VW2K7AJ6FM353626 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | WHITE | JST-4713 | NA | $509.00 | NA |
| 11677-1 | 3VW2K7AJ5FM353350 | $12,498.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4714 | NA | $509.00 | NA |
| 11678-1 | 3VW2K7AJ4FM212228 | $12,496.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4715 | NA | $506.00 | NA |
| 11679-1 | 3VW2K7AJ5FM353391 | $12,496.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4716 | NA | $509.00 | NA |
| 11680-1 | 3VW2K7AJ3FM220786 | $12,496.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4717 | NA | $509.00 | NA |
| 11681-1 | 3VW2K7AJ5FM212168 | $12,496.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4718 | NA | $509.00 | NA |
| 11682-1 | 3VW2K7AJ2FM355470 | $12,496.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4719 | NA | $509.00 | NA |
| 11683-1 | 3VW2K7AJ6FM212954 | $12,496.00 | 12 MONTHS | $509.00 | $7,500.00 | 2015 | VW | JETTA S | BLACK | JST-4720 | NA | $509.00 | NA |

2000 MILES ALLOWED PER MONTH ON 12 MONTH LEASE
OVER MILEAGE CHARGE IS $.35 PER MILE

IF CARS ARE RETURNED TO FLEETWAY LEASING CO. AT THE END OF TERM THEY ARE FOB FEASTERVILLE, PA

LEASE TERM IS 12 MONTHS FROM JUNE 1, 2016 ALL LEASE PAYMENTS ARE DUE ON THE FIRST OF EACH MONTH.

IT IS UNDERSTOOD AND AGREED that this Agreement and Schedule "A" is hereby made part of the Master Vehicle Lease Agreement herein dated the 17th day of June, 2016 and that all of the terms and conditions of said Vehicle Lease Agreement, are incorporated between the Parties upon Lessee signing this Agreement.

This lease is hereby assigned to, and are subject to a security interest held by 1st Source Bank

LESSOR: FLEETWAY LEASING CO
By:
Title:
Date:

LESSEE: AUTO BOUTIQUE OF SOUTH FLORIDA INC
By:
Title:
Date: 6/21/6

ACCEPTANCE OF MASTER LEASE AGREEMENT
AND SCHEDULE "B"
June 17, 2016
BETWEEN
FLEETWAY LEASING CO
AND
AUTO BOUTIQUE OF SOUTH FLORIDA INC

| LEASE # | SERIAL NUMBER | CAP COST INVOICE | TERM | MONTHLY PAYMENTS | LEASE END BUYOUT | YEAR | MAKE | MODEL | COLOR | TAG# | BANK FEE | JUNE PMT | TAG & TITLE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11684-1 | 1VWAT7A35FC035583 | $16,408.00 | 12 MONTHS | $675.00 | $8,500.00 | 2015 | VW | PASSAT | WHITE | JST-4721 | NA | $675.00 | NA |
| 11685-1 | 1VWAT7A31FC034465 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4722 | NA | $675.00 | NA |
| 11686-1 | 1VWAT7A34FC033732 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4723 | NA | $675.00 | NA |
| 11687-1 | 1VWAT7A35FC033738 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4724 | NA | $675.00 | NA |
| 11688-1 | 1VWAT7A35FC034453 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4725 | NA | $675.00 | NA |
| 11689-1 | 1VWAT7A36FC034477 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4726 | NA | $675.00 | NA |
| 11690-1 | 1VWAT7A32FC034443 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4727 | NA | $675.00 | NA |
| 11691-1 | 1VWAT7A32FC033580 | $16,408.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4728 | NA | $675.00 | NA |
| 11692-1 | 1VWAT7A38FC034607 | $16,433.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | WHITE | JST-4729 | NA | $675.00 | NA |
| 11693-1 | 1VWAT7A32FC036481 | $16,433.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | BLACK | JST-4730 | NA | $675.00 | NA |
| 11694-1 | 1VWAT7A32FC036469 | $16,715.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | BLACK | JST-4731 | NA | $675.00 | NA |
| 11695-1 | 1VWAT7A35FC036519 | $16,835.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | BLACK | JST-4732 | NA | $675.00 | NA |
| 11696-1 | 1VWAT7A30FC040211 | $16,835.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | BLACK | JST-4733 | NA | $675.00 | NA |
| 11697-1 | 1VWAT7A34FC040213 | $16,835.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | BLACK | JST-4734 | NA | $675.00 | NA |
| 11698-1 | 1VWAT7A34FC040231 | $16,835.00 | 12 MONTHS | $675.00 | $9,500.00 | 2015 | VW | PASSAT | BLACK | JST-4735 | NA | $675.00 | NA |

2000 MILES ALLOWED PER MONTH ON 12 MONTH LEASE
OVER MILEAGE CHARGE IS $.35 PER MILE

IF CARS ARE RETURNED TO FLEETWAY LEASING CO. AT THE END OF TERM THEY ARE FOB FEASTERVILLE, PA

LEASE TERM IS 12 MONTHS FROM JUNE 1, 2016 ALL LEASE PAYMENTS ARE DUE ON THE FIRST OF EACH MONTH.

IT IS UNDERSTOOD AND AGREED that this Agreement and Schedule "B" is hereby made part of the Master Vehicle Lease Agreement between the Parties hereto dated the 17th day of June, 2016 and that all of the terms and conditions of said Vehicle Lease Agreement shall apply to the lease of the vehicles between the Parties upon Lessee's signing this Agreement.

LESSOR: FLEETWAY LEASING CO

By:

Title:

Date:

LESSEE: AUTO BOUTIQUE OF SOUTH FLORIDA INC

By:

Title:

Date:

This leased vehicle(s) described herein and all proceeds of such lease have been assigned to, and are subject to security interest held by 1st Source Bank

ACCEPTANCE OF MASTER LEASE AGREEMENT
AND SCHEDULE "C"
June 17, 2016
BETWEEN
FLEETWAY LEASING CO
AND
AUTO BOUTIQUE OF SOUTH FLORIDA INC

| LEASE # | SERIAL NUMBER | CAP COST INVOICE | TERM | MONTHLY PAYMENTS | LEASE END BUYOUT | YEAR | MAKE | MODEL | COLOR | TAG# | BANK FEE | JUNE PMT | TAG & TITLE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11788-1 | 5NPE24AF3FH007351 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | SILVER | JST-4768 | NA | $615.77 | NA |
| 11789-1 | 5NPE24AFXFH033342 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | RED | JST-4769 | NA | $615.77 | NA |
| 11790-1 | 5NPE24AF3FH088516 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | WHITE | JST-4770 | NA | $615.77 | NA |
| 11791-1 | 5NPE24AF0FH088571 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | WHITE | JST-4771 | NA | $615.77 | NA |
| 11792-1 | 5NPE24AF6FH088820 | $15,913.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | WHITE | JST-4772 | NA | $615.77 | NA |
| 11793-1 | 5NPE24AF8FH089406 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | BLACK | JST-4773 | NA | $615.77 | NA |
| 11794-1 | 5NPE24AF5FH088820 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | WHITE | JST-4774 | NA | $615.77 | NA |
| 11795-1 | 5NPE24AF7FH088240 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | SILVER | JST-4775 | NA | $615.77 | NA |
| 11796-1 | 5NPE24AF2FH087797 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | BLACK | JST-4776 | NA | $615.77 | NA |
| 11797-1 | 5NPE24AF6FH088641 | $15,888.92 | 12 MONTHS | $615.77 | $9,500.00 | 2015 | HYUNDAI | SONATA SE | SILVER | JST-4777 | NA | $615.77 | NA |

2000 MILES ALLOWED PER MONTH ON 12 MONTH LEASE
OVER MILEAGE CHARGE IS $.35 PER MILE

IF CARS ARE RETURNED TO FLEETWAY LEASING CO AT THE END OF TERM THEY ARE FOB FEASTERVILLE, PA

LEASE TERM IS 12 MONTHS FROM JUNE 1, 2016 ALL LEASE PAYMENTS ARE DUE ON THE FIRST OF EACH MONTH.

IT IS UNDERSTOOD AND AGREED that this Agreement and Schedule "C" is hereby made part of the Master Vehicle Lease Agreement between the Parties hereto dated the 17th day of June, and that all of the terms and conditions of said Vehicle Lease Agreement are incorporated by reference as the agreement between the Parties to by Lessee signing this Agreement.

LESSOR: FLEETWAY LEASING CO.

By:

Title:

Date: 6/3/16

LESSEE: AUTO BOUTIQUE OF SOUTH FLORIDA INC

By:

Title:

Date: 6/21/16

ACCEPTANCE OF MASTER LEASE AGREEMENT
AND SCHEDULE "D"
June 17, 2016
BETWEEN
FLEETWAY LEASING CO
AND
AUTO BOUTIQUE OF SOUTH FLORIDA INC

| LEASE # | SERIAL NUMBER | CAP COST INVOICE | TERM | MONTHLY PAYMENTS | LEASE END BUYOUT | YEAR | MAKE | MODEL | COLOR | TAG # | BANK FEE | JUNE PMT | TAG & TITLE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11832-1 | 2C4RC1BG2ER21T478 | $14,829.50 | 12 MONTHS | $570.00 | $9,500.00 | 2014 | CHRYSLER | Town & Country | GRAY | JSW-4821 | NA | $570.00 | NA |

2000 MILES ALLOWED PER MONTH ON 12 MONTH LEASE
OVER MILEAGE CHARGE IS $.35 PER MILE

IF CARS ARE RETURNED TO FLEETWAY LEASING CO AT THE END OF TERM THEY ARE FOB FEASTERVILLE, PA

LEASE TERM IS 12 MONTHS FROM JUNE 1, 2016 ALL LEASE PAYMENTS ARE DUE ON THE FIRST OF EACH MONTH.

IT IS UNDERSTOOD AND AGREED that this Agreement and Schedule "D" is hereby made part of the Master Vehicle Lease Agreement between the Parties hereto dated the 17th day of June, 2016 and that all of the terms and conditions of said Vehicle Lease Agreement are incorporated by reference as the agreement between the Parties upon Lessee signing this Agreement.

LESSOR:  FLEETWAY LEASING CO.

By: _____

Title _____

Date _____

LESSEE:  AUTO BOUTIQUE OF SOUTH FLORIDA INC

By: _____

Title _____

Date _____

10/12/2017 4:45 AM                                                                                      Page 1 of  1

Firstrust Bank, 1 Walnut Grove Drive, Horsham PA 19044
Edna Hart: 215-728-8359,

## RETURN ITEM REPORT

This is to notify you that an ACH item has been returned.  Further action should occur within the NACHA rule guidelines.

## ORIGINATOR OF ORIGINAL ITEM

| | |
|---|---|
| Company Name: | FMC3 LLC |
| Company Discretionary Data: | |
| Company ID: | 473874708 |
| Company Descriptive Date: | |
| Company Entry Description: | FMC310TH-2 |
| Originating DFI RTN: | 236073801 |

## ORIGINAL ITEM INFORMATION

| | |
|---|---|
| Original RDFI ID: | 267084131 |
| Receiver Account Number: | 850269221 |
| Individual ID Number: | 413811 |
| Individual Name: | CAR AP RENTAL |
| Standard Entry Class Code: | PPD |
| Amount: | $399.00 |
| Effective Entry Date: | October 10, 2017 |

## TRACE NUMBERS

| | |
|---|---|
| Return: | 021000028479062 |
| Original: | 236073803123916 |

## RETURN INFORMATION

| | |
|---|---|
| Return Reason Code: | R01 |
| Return Reason Code Description: | INSUFFICIENT FUNDS |
| Return Settlement Date: | October 12, 2017 |
| Transaction Code: | 26 |
| Transaction Description: | Demand Debit - Auto Return or NOC |

The above data is translated according to NACHA standards. If it does not appear accurate, please contact the financial institution that originated this return item.

*** END OF REPORT ***

10/12/2017 4:45 AM                                                                                  Page 1 of  1

Firstrust Bank, 1 Walnut Grove Drive, Horsham PA 19044
Edna Hart: 215-728-8359,

# RETURN ITEM REPORT

This is to notify you that an ACH item has been returned.  Further action should occur within the NACHA rule guidelines.

## ORIGINATOR OF ORIGINAL ITEM

| | |
|---|---|
| Company Name: | FMC3 LLC |
| Company Discretionary Data: | |
| Company ID: | 473874708 |
| Company Descriptive Date: | |
| Company Entry Description: | FMC310TH-2 |
| Originating DFI RTN: | 236073801 |

## ORIGINAL ITEM INFORMATION

| | |
|---|---|
| Original RDFI ID: | 267084131 |
| Receiver Account Number: | 850269221 |
| Individual ID Number: | 413811 |
| Individual Name: | CAR AP RENTAL |
| Standard Entry Class Code: | PPD |
| Amount: | $399.00 |
| Effective Entry Date: | October 10, 2017 |

## TRACE NUMBERS

| | |
|---|---|
| Return: | 021000028479062 |
| Original: | 236073803123916 |

## RETURN INFORMATION

| | |
|---|---|
| Return Reason Code: | R01 |
| Return Reason Code Description: | INSUFFICIENT FUNDS |
| Return Settlement Date: | October 12, 2017 |
| Transaction Code: | 26 |
| Transaction Description: | Demand Debit - Auto Return or NOC |

The above data is translated according to NACHA standards. If it does not appear accurate, please contact the financial institution that originated this return item.

*** END OF REPORT ***

Exhibit "E"

**Installment Note**

$ 83,158 ⁱ⁰/₁₀₀                                    July  15  , 20 16.

FOR VALUE RECEIVED, the undersigned promise(s) to pay to
Fleetway Leasing Co
_eight three thousand one hundred fifty eight_ DOLLARS ($ 83,158.10 )
the principal sum of
and interest from  8 11 16  on the balance of principal remaining from time to
time unpaid at the rate of  4 ⁰/₀  per cent per annum, such principal sum and
interest to be payable in installments as follows: Six thousand twenty nine ⁸⁴/₁₀₀
Plus interest At 4% DOLLARS ($ 6,929.84 ) on the 15ᵗʰ day of August , 20 16
and monthly payments of 6,929.84 plus interest DOLLARS ($ 6929.84 )
on the  15ᵗʰ  day of each and every month thereafter until this Note is fully paid, except that the
final payment of principal and interest, if not sooner paid, shall be due on the  1ˢᵗ  day of
July , 20 17 . All such payments on account of the indebtedness evidenced by this
Note shall be applied first to accrued and unpaid interest on the unpaid principal balance and the
remainder to principal.

    Payments are to be made at Fleetway Leasing 10 336 West Street R.A.
Feasterville att: , or at such other place as the legal holder of this Note may from time
to time in writing appoint.

    And to secure the payment of said amount, the undersigned hereby authorizes, irrevocably,

any attorney of any Court of Record to appear for the undersigned in such Court, in term time or
vacation, at any time after maturity, and confess a judgment, without process, in favor of the
holder

of this Note, for such amount as may appear to be unpaid thereon, together with reasonable costs
of collection, including reasonable attorney's fees and to waive and release all errors which may
intervene in any such proceedings, and consent to immediate execution upon such judgment,
hereby ratifying and confirming all that said attorney may do by virtue hereof.

    At the option of the legal holder hereof and without notice, the principal sum remaining
unpaid hereon, together with accrued interest thereon, shall become at once due and payable at
the place of payment aforesaid in case default shall occur in the payment, when due, of any
installment of principal or interest in accordance with the terms hereof.

    All parties hereto severally waive presentment for payment, notice of dishonor, protest and
notice of protest.

                                      (signed) _____

# Exhibit "F"



## HANEY LAW GROUP, PLLC
### ATTORNEYS AT LAW
3000 Towncenter Drive, Suite 2570
Southfield, MI 48075
Phone - 248.414.1470 - Fax - 248.414.1471
www.haneylawgroup.net

January 13th, 2017

Auto Boutique
3975 25th Street
Miami, Florida 33142
Attn:  Howard Elfand
       Youssef Aziz

*Sent certified mail return receipt requested*

## DEMAND LETTER

RE:     *Auto Boutique/Fleetway Leasing Company Lease Agreement*

Mr. Elfand and Mr. Aziz;

Please be advised the Haney Law Group, PLLC represents Fleetway Leasing company with respect to the above-entitled matter for the purpose of this formal Notice pursuant to paragraph 17 of the duly executed Forbearance Agreement and all other Notice requirements so contained in the underlying Lease Agreement.

It is our understanding that Auto Boutique is in default of the relevant Lease and Forbearance Agreement(s) duly executed and personally guaranteed by yourselves on behalf of Auto Boutique.

Please regard this correspondence as an *immediate demand for payment and notice of intent that absent immediate resolution, further proceedings pursuant to all Agreements, as well as the Personal Guaranties, shall be initiated.*

This Demand is for all existing monies owed under the relevant Lease Agreement, as well as an acceleration of any and all future financial obligations contractually owed under the relevant Lease Agreement(s).

Additionally, please provide my office a copy of the current Lease Agreement for the property being utilized for the rental and storage of my client's vehicles, along with all necessary contact information for the landlord.

Please contact the undersigned, or alternatively my client, within ten (10) calendar days with an amenable arrangement to satisfy the current and future contractual breaches, as well as the requested information contained herein.

Best regards,

Steven A. Haney
Attorney at Law

cc:  Fleetway Leasing Co.

2



## HANEY LAW GROUP, PLLC
### ATTORNEYS AT LAW
3000 Towncenter Drive, Suite 2570
Southfield, MI 48075
Phone - 248.414.1470 - Fax - 248.414.1471
www.haneylawgroup.net

January 13th, 2017

Auto Boutique
3975 25th Street
Miami, Florida 33142
Attn:  Howard Elfand
       Youssef Aziz

Howard Elfand
19111 Collins Avenue
Sunny Isles, FL 33160

*Sent certified mail return receipt requested*

## DEMAND LETTER

    RE:  *Auto Boutique/Fleetway Leasing Company Lease Agreement*

Mr. Elfand;

Please be advised the Haney Law Group, PLLC represents Fleetway Leasing company with respect to the above-entitled matter for the purpose of this formal Notice pursuant to paragraph 17 of the duly executed Forbearance Agreement and all other Notice requirements so contained in the underlying Lease Agreement.

It is our understanding that Auto Boutique is in default of the relevant Lease and Forbearance Agreement(s) duly executed and personally guaranteed by yourself on behalf of Auto Boutique.

Please regard this correspondence as an *immediate demand for payment and notice of intent that absent immediate resolution, further proceedings pursuant to all Agreements, as well as the Personal Guaranties, shall be initiated.*

This Demand is for all existing monies owed under the relevant Lease Agreement, as well as an acceleration of any and all future financial obligations contractually owed under the relevant Lease Agreement.

Additionally, please provide my office a copy of the current Lease Agreement for the property being utilized for the rental and storage of my client's vehicles, along with all necessary contact information for the landlord.

Please contact the undersigned, or alternatively my client, within ten (10) calendar days with an amenable arrangement to satisfy the current and future contractual breaches, as well as the requested information contained herein.

Best regards,

Steven A. Haney
Attorney at Law


cc: Fleetway Leasing Co.

2



## HANEY LAW GROUP, PLLC

**ATTORNEYS AT LAW**

3000 Towncenter Drive, Suite 2570
Southfield, MI 48075
Phone - 248.414.1470 - Fax - 248.414.1471
www.haneylawgroup.net

January 13th, 2017

Auto Boutique
3975 25th Street
Miami, Florida 33142
Attn: Howard Elfand
      Youssef Aziz

Youssef Aziz
11330 NW 82nd Terrace
Doral, Florida 33178-1767

*Sent certified mail return receipt requested*

## DEMAND LETTER

   RE: *Auto Boutique/Fleetway Leasing Company Lease Agreement*

Mr. Aziz;

Please be advised the Haney Law Group, PLLC represents Fleetway Leasing company with respect to the above-entitled matter for the purpose of this formal Notice pursuant to paragraph 17 of the duly executed Forbearance Agreement and all other Notice requirements so contained in the underlying Lease Agreement.

It is our understanding that Auto Boutique is in default of the relevant Lease and Forbearance Agreement(s) duly executed and personally guaranteed by yourself on behalf of Auto Boutique.

Please regard this correspondence as an *immediate demand for payment and notice of intent that absent immediate resolution, further proceedings pursuant to all Agreements, as well as the Personal Guaranties, shall be initiated.*

This Demand is for all existing monies owed under the relevant Lease Agreement, as well as an acceleration of any and all future financial obligations contractually owed under the relevant Lease Agreement.

Additionally, please provide my office a copy of the current Lease Agreement for the property being utilized for the rental and storage of my client's vehicles, along with all necessary contact information for the landlord.

Please contact the undersigned, or alternatively my client, within ten (10) calendar days with an amenable arrangement to satisfy the current and future contractual breaches, as well as the requested information contained herein.

Best regards,

Steven A. Haney
Attorney at Law

cc:  Fleetway Leasing Co.